White *v.* Braddock Borough School District, Appellant.

*Building contract—Performance—Architect—Delay—Damages.*

In an action to recover money due on a building contract, if it appears that the contractor made every reasonable effort, in good faith, to perform his contract fully, and within the period given him to perform it, and the building was completed and taken possession of and used for its intended purpose, and adequately served its purpose, the contractor is entitled to recover the balance of the contract price, together with the amount admitted to be due for the additional work, less such deductions as will compensate the owner for any minor imperfections and omissions.

Under such contract, if the owner's architect fails to furnish the lines and levels, or to do any other act which he was required to do under the contract, or if he makes such changes in the plans and specifications as to cause delay, the contractor will not be answerable for the delay.

. If, however, the delay resulted from the condemnation, with reasonable

promptness, of material which the architect under the contract was required to pass upon, and the necessity of procuring other material, such delay will not be chargeable to the owner.

Argued Nov. 2, 1893.    Appeal, No. 233, Oct. T., 1893, by defendant, from judgment of C. P. No. 3, Allegheny Co., Nov. T., 1892, No. 568, on verdict for plaintiff, D. M. White. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Assumpsit on building contract.    Before PORTER, J.

At the trial it appeared that, on July 13; 1891, plaintiff entered into a written contract with the school district defendant, by the terms of which plaintiff contracted to build for defendant a brick and stone school building for the price of $26,425, the building to be completed " on or before the 1st day of March, 1892." Under the terms of the contract, plaintiff was liable to pay to defendant the sum of $25.00 per day for every day after March 1, 1892, " as and for liquidated damages." On Nov. 3, 1892, this suit was brought by plaintiff, he alleging that his contract was duly performed, and that the contract price of $26,425 was due and payable, together with certain extra items, amounting to $270, and that, after the allowance of all credits for payments by defendant, a balance of $6,995 remained due to him. Defendant claimed that plaintiff was in default from March 1, 1892, to Aug. 7, 1892, one hundred and fifty-nine days. Plaintiff claimed that the delay was caused by the failure of defendant's architect to furnish the lines and levels of the building on or before July 15, 1891, as required by the contract.

The court charged in part as follows:

" The important clause in the contract, or the clause which in this controversy has become important, relates to the time at which the building was to be finished. It is section 6 of the contract, which I will read: ' The contractor shall and will proceed with the said work and every part and parcel thereof, in a prompt and diligent manner, and shall and will wholly finish the said work according to the said drawings and specifications and this contract on or before the first day of March in the year one thousand eight hundred and ninety-two, *Provided*, that possession of the premises be given the contractor, and

lines and levels of the building furnished him, on or before the 15th day of July in the year one thousand eight hundred and ninety-one; and in default thereof, the contractor shall pay to the owner twenty-five dollars for every day thereafter that the said work shall remain unfinished, as and for liquidated damages.' . . .

["Now, were these lines and levels furnished? That is a question for you.] [1] The architect has testified that holes had been drilled and iron pins put in; that the foundation was in solid rock; that the excavation was done at the time this contract was let, and that the plans were furnished at that time. Before, however, you can enforce this clause, you must find that the levels were furnished as required in this precedent condition. If they were not furnished before the 15th of July, or on that day, then when were they furnished? Is there anything in this case to indicate that there was any delay because the levels were not furnished, and that, the levels being furnished, the work went on? Is there any evidence that there were ever any levels furnished other than those that were furnished on or before the 15th day of July, 1891? One of the witnesses has testified that the levels were indicated, in a measure, by the plans. I believe the architect so testified,—at any rate, he testified that the foundation had been dug and that the pins had been put in. You will consider all the case, gentlemen,—all the evidence in the case, and all the circumstances surrounding it, and then find, as a fact, primarily, whether or not these levels were furnished; because, in view of the wording of this clause, we feel that it is our duty to say to you that that is a condition precedent to the enforcing of this claim for damages. The lines and levels must have been furnished some time; the building has been completed, and neither party to this controversy has offered one scintilla of evidence going to show that it was not upon the proper lines or that it was not constructed at the proper levels. Were any lines and levels, other than those marked and indicated upon the ground at the time this contract was made, given? This was a printed contract, and was filled in upon a printed form. Of course, the wording of it has to be treated with the same consideration as if it were written, and every condition set forth in it has to be fulfilled; but, in such matters, it is sometimes an explanation

of conditions which are injected that they were included in, and through inadvertence, or because the mere having them in there would not do any harm, they are permitted to stay.

" [Now, if you pass affirmatively upon the question of whether or not these lines and levels were furnished,—in other words, that means whether the data necessary to go on and construct the building were furnished on or before the 15th day of July, —in other words, whether or not the school board furnished their contractor with the information which would enable him to proceed to fulfill his contract on or before the 15th day of July, (and you pass upon that question just as you pass upon any other question in this case, by the weight of the evidence,) then, certain other questions will arise, as to whether or not this penalty is to be enforced.] " [2].

. After considering various items in connection with the architect, the court continued :

" [Now, gentlemen, if the lines and levels of this building were furnished, then you come to consider the question of whether or not there was delay, and, if so, then what is the amount of the damage to be awarded?] " [3]

Plaintiff presented among others this point :

. " 7. If the jury find, under all the evidence, that the plaintiff made every reasonable effort, in good faith, to perform his contract fully and within the period given him to perform it, and that the building was completed and taken possession of, and used for its intended purpose, and adequately serves said purpose, then the plaintiff is entitled to recover the balance on the contract price, together with the amount admitted to be due for the additional work, less such deductions as will compensate the defendant for any minor imperfections and omissions; and if the jury also find that such imperfections and omissions and the delay were chargeable to the action of the defendant's architect, and not to the fault of the plaintiff, then no deduction should be allowed on account of them. *Answer :* This point is affirmed. You must bear in mind, however, as to the element of delay, that it must be chargeable to the action of the architect, if he failed to furnish the lines and levels, or do any other act which he was required to do, under the contract, or, if he made such changes in the plans and specifications as to cause delay, the plaintiff would not be answerable for the

delay, but if the delay resulted from the condemnation with reasonable promptness of material which the architect, under the contract, was required to pass upon, and the necessity of procuring other material, such delay would not be chargeable to the architect." [4]

Defendant's point was among others as follows:

" 5. That there is no evidence in this case from which the jury can find that the defendant waived its right to demand the liquidated damages as provided in section 6 of said contract. *Answer:* If you find as a fact that the lines and levels were furnished on or before July 15, 1891, as required by the contract, then this point is affirmed." [5]

Verdict and judgment for plaintiff for $6,955.93. Defendant appealed.

*Errors assigned* were (1–5) instructions, quoting them.

*S. Harvey Thompson, A. B. Stevenson* with him, for appellant, cited: Webb v. Lees, 149 Pa. 17

*Boyd Crumrine, D. F. Patterson* with him, for appellee, cited: Danville Bridge Co. v. Pomroy, 15 Pa. 159; Malone v. Phila., 12 Phila. 323; Preston v. Finney, 2 W. & S. 55; Chambers v. Jaynes, 4 Pa. 43; Monocacy Bridge Co. v. Mfg. Co., 83 Pa. 517; Wilhelm v. Caul, 2 W. & S. 26; School Furniture Co. v. Warsaw Dist., 122 Pa. 494; Streeper v. Williams, 48 Pa. 450; Clements v. R. R., 132 Pa. 445; Shreve v. Brereton, 51 Pa. 175; Curry v. Larer, 7 Pa. 470; Pennypacker v. Jones, 106 Pa. 237; Moore v. Colt, 127 Pa. 289.

PER CURIAM, December 30, 1893:

An examination of the record in this case, with reference to the questions presented for our consideration, has failed to convince us that either of the specifications of error should be sustained. Plaintiff's right to recover depended on questions of fact which appear to have been properly submitted to the jury and found in his favor. The main questions were, whether he substantially performed his contract with defendant within the time and in the manner required by the terms thereof. Was there a failure by him to perform in either of these respects; and, if so, was it due to his own neglect or default, or to the

neglect, default or improper interference of its architect? If the jury found there was a failure to perform within the time required, and the delay was chargeable to plaintiff himself, they were instructed, as requested in defendant's second point, that the measure of damages was the twenty-five dollars per day, specified in the contract. If they found that, notwithstanding an honest effort on his part to perform his contract, he failed to do so in some minor particulars, and the building was accepted by the defendant in that condition, they were instructed to allow such reasonable deductions as would adequately compensate for such deficiencies in workmanship and materials. On this subject, the learned trial judge—in affirming plaintiff's seventh point—charged thus: "If the jury find, under all the evidence, that the plaintiff made every reasonable effort, in good faith, to perform his contract fully and within the period given him to perform it, and that the building was completed and taken possession of and used for its intended purpose, and adequately serves said purpose, then the plaintiff is entitled to recover the balance of the contract price, together with the amount admitted to be due for the additional work, less such deductions as will compensate the defendant for any minor imperfections and omissions; and if the jury also find that such imperfections and omissions and the delay were chargeable to the action of the defendant's architect, and not to the fault of the plaintiff, then no deduction should be allowed on account of them." In same connection he further said: "You must bear in mind, however, as to the element of delay, that it must be chargeable to the action of the architect; if he failed to furnish the lines and levels, or to do any other act which he was required to do under the contract, or if he made such changes in the plans and specifications as to cause delay, the plaintiff would not be answerable for such delay, but if the delay resulted from the condemnation, with reasonable promptness, of material which the architect, under the contract, was required to pass upon, and the necessity of procuring other material, such delay would not be chargeable to the architect."

These instructions, as further explained and enforced in other portions of the charge, were not only warranted by the testimony but they were full and adequate. The remaining specifications, in which reference is made to that provision of the

contract which requires the lines and levels to be furnished on or before the 15th of July, 1891, do not require discussion. Neither of them is sustained. The case was carefully and accurately tried, and there appears to be no sufficient reason for disturbing the judgment.

Judgment affirmed.