Bellefonte Borough Authority *v.* Gateway
Equipment & Supply Co., Inc.
et al., Appellants.

Argued January 8, 1971.   Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Anthony J. Martin,* with him *Donald D. Rossetti,* and *Martin, Finnegan and Rossetti,* for appellants.

*John W. Blasko,* with him *McQuade, Blasko, Brown and Geiser,* for appellee.

OPINION BY MR. JUSTICE JONES, May 13, 1971:

This appeal presents two principal issues: (1) where a contractor, whose bid for work to be performed for a municipal authority is accepted and to whom the contract is awarded, refuses to enter into the contract on the ground that the amount of its bid was arrived at by an honest mistake which should have been obvious to the authority, are the contractor and its surety liable on the bond which accompanied the bid? (2) if they are liable, is the extent of their liability measured by the actual loss to the authority or the amount of the bond?

The Bellefonte Borough Authority (Authority) prepared plans and specifications for the construction of sanitary sewers and the resurfacing of streets in Bellefonte Borough. On the basis of these plans and specifications, the Authority invited contractors to submit written bids for the accomplishment of the work. Prospective bidders were instructed that each bid must be accompanied by either cash, a certified check or a bond

in an amount representing five (5%) per cent of the bid; if a bond was furnished, the surety was subject to approval by the Authority. Bidders were further instructed, in writing: "The successful bidder, upon his failure or refusal to execute and deliver the contract and bonds [performance, labor and materialmen] within ten days after he has received notice of the acceptance of his bid, shall forfeit to the [Authority], *as liquidated damages* for such failure or refusal, the security deposited with his bid." (Italics supplied).

Gateway Equipment & Supply Co., Inc. (Gateway), on August 5, 1968, submitted a bid for the work and attached to its bid a bond in the amount of $45,000 wherein Gateway was principal and Maryland Casualty Company (Maryland) was surety.[1] Inter alia, the bond provided that it was expressly "understood and agreed that the liability of the Surety for any and all claims [under the bond] shall, in no event, exceed *the penal amount* of [$45,000]." (Italics supplied).

When the bids were opened on August 5, 1968, Gateway's bid ($831,665.41) was the lowest bid, the next lowest being that of Gerl Construction Company (Gerl) ($1,220,554.34).

After the bids were opened, Gateway notified the Authority that it had made a mistake in the computation of its bid. On August 21, 1968, the Authority awarded the contract to Gateway at its bid price and notified Gateway of its intention to hold it responsible on its bid. Gateway refused to enter into the contract and was declared in default. The work was then readvertised for bids by the Authority, Gerl bid $1,220,-366.78 (approximately $217 less than its original bid) and the contract was awarded to Gerl.

The Authority then instituted an assumpsit action on the bond against Gateway and Maryland in the Com-

[1] This bond was slightly in excess of 5%.

mon Pleas Court of Centre County. After a jury trial, a verdict in the amount of $45,000 was returned in favor of the Authority and against Gateway and Maryland. Motion for a new trial having been refused, an appeal was taken from judgment entered on the verdict.

In its instructions to the jury the court below left to its determination three questions of fact: (a) whether, in fact, Gateway made a mistake in its bid; (b) whether the mistake was inadvertently made; (c) whether the Authority knew or had reason to know that Gateway had made a mistake in its bid when proffered.[2] The jury resolved all these questions in favor of the Authority. Our examination of the testimony reveals that the jury's resolution of these questions to be fully sustained by the record.

The court below, being of the opinion that, if the jury determined these factual issues in favor of the Authority, it became a matter of law for the court, from an examination of the instructions and bid bond,

[2] Apparently, there is usually some conflict between a contractor and the engineer for the contractee on the rock excavation involved in a contract, such questions as to whether the substance excavated was "rock", the amount of such excavation, etc.; therefore, a lower price is often placed on the "rock excavation" in the bid tabulation and the difference made up on some other item such as "pipes" in the instant case. The testimony indicates that Gateway's superintendent, in making up the bid tabulation, had estimated rock excavation at $14 per yard; later Gateway's president, unknown to the superintendent, changed the $14 per yard to $4 by erasing the "1" and expected the additional $10 per yard to be used in the "pipe" tabulation, thus making up the difference; the error was not caught and the total bid was based on the $4 per yard for rock excavation without the $10 difference being made up on the "pipe" tabulation. Gateway and Maryland called an expert witness who testified that, in his opinion, anyone who opened and examined the bids and accompanying bid tabulation should have realized an error had been made. The jury chose not to accept the opinion of this expert.

to determine whether the parties intended that the amount of the bid bond represented liquidated damages or a penalty; decided that the amount of the bid bond represented liquidated damages and instructed the jury that, if the jury resolved the three factual questions in the Authority's favor, the jury should return a verdict in favor of the Authority in the amount of the bid bond, i.e., $45,000.

Appellants argue that the provisions of Restatement of Contracts, vol. 1, §§339, 340 required the court to submit to the jury the question whether the written undertakings provided for liquidated damages, or a penalty and in deciding this question, it was for the jury to determine (a) whether the amount fixed in the undertaking was a reasonable foreseeable forecast of just compensation for the harm that was caused by the breach of the undertakings and (b) whether the harm caused by the breach was one that was incapable or very difficult of accurate estimation. The thrust of this argument is that, had the court permitted the jury to consider these questions, it could have found that the only harm caused by Gateway's refusal to enter into the contract was the cost involved in the readvertising for new bids and additional legal expenses which amounted to approximately $1,000 and, therefore, the amount of the bid bond was a penalty and not liquidated damages. With this contention we do not agree.

The language of the instructions to bidders relative to the bond to be furnished with the bid and the bond itself was before the court for its interpretation. The instructions to bidders clearly and expressly provided that the amount of the bond should, in the event of default, be considered *as liquidated damages* and the court below correctly so concluded. It so happens, if appellants' argument is factually sound, in the case at bar that the actual damages incurred by the Authority

was less than the amount of the bond.[3] Had the actual damages been more than the amount of the bond, the Authority would have been limited to recovery only of the amount of the bond. See *Colella v. Allegheny County,* 391 Pa. 103, 137 A. 2d 265 (1958).

It was for the court below to resolve, from the language of the instructions to the bidders and the form of the bond, the intent of the parties. The interpretation by the court that the parties intended that the amount of the bond be liquidated damages rather than a penalty was proper. The result reached was clearly consonant with *White v. Braddock School District,* 159 Pa. 201, 28 A. 136 (1893), *Vrooman v. Milgram,* 124 Pa. Superior Ct. 145, 147, 148, 188 A. 538 (1936) and *Lichetti v. Conway,* 44 Pa. Superior Ct. 71 (1910).

In *Colella,* supra, this Court said: ". . . we believe that the public interest can be protected and justice rendered to all the contracting parties involved by holding that the bidder and its surety are liable only for the amount of the bid bond when the bidder cancels its bid before entering into a contract with the [municipality] even though the loss greatly exceeds the amount of the bid bond." (p. 110). The rationale of *Colella,* is equally applicable where the loss does not exceed the amount of the bid bond.

Judgment affirmed.

---

[3] It may well be that the refusal of Gateway to execute this contract resulted in much greater damage. The Authority had reserved a period of 75 days within which to accept or refuse bids, the purpose obviously being to allow adequate time to ascertain the entire cost of the project for which financing had to be secured. The financing was dependent on the municipal bond market and a grant of Federal funds. Whether such financing resulted in greater cost due to Gateway's refusal of the contract was not shown upon the instant record because of the court's interpretation that the amount of damages was the amount of the bond. Moreover, it is highly questionable whether this additional cost could have been shown with any reasonable accuracy.