# Jaxtheimer, Appellant, *v.* Sharpsville Borough.

*Boroughs—Contracts—Time of contract—Posting and advertising ordinance—Act of April 3, 1851, Sec. 3, P. L. 320.*

1. A resolution of a borough council that the bid of a firm of contractors "be accepted subject to the entering into of a contract by them with the borough, as provided for in the printed specifications," is not in itself a contract within the meaning of Section 3 of the Act of April 3, 1851, P. L. 320, which provides that such a contract cannot be entered into before the ordinance authorizing it has been posted and advertised for a period of ten days after its final passage.

2. If a formal contract in strict conformity with the printed specifications including the furnishing of bonds as required by the specifications is entered into between the borough and the contractors twenty-one days after the passing of the resolution, nineteen days after its posting, and thirteen days after its publication, the contract will be binding upon the borough.

3. An acceptance of an offer to be effectual must be identical with the offer and unconditional. Where a person offers to do a definite thing, and another accepts conditionally or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat, or it is a counter proposal, and in neither case is there an agreement.

*Boroughs—Ordinance—Paving contract—Preparation of contract—Burgess—Borough engineer—Paving or Street Committee.*

4. Where a borough ordinance provides that the specifications for a paving contract should be prepared or procured by the burgess and paving committee of council, it is immaterial as affecting the validity of the contract that they were in fact prepared or procured and reported to council by the borough engineer and the street committee, if it appears that there was no special paving committee; that what was intended by that term was the standing street committee; and that for the current year the street committee and the paving committee had been one and the same, and

made up of the same members of the council. In such a case whether the burgess or the borough engineer acted in preparing the specifications is of no special consequence in view of the fact that the committee was authorized either to prepare or to procure the specifications.

Argued October 9, 1912. Appeal, No. 211, Oct. T., 1912, by plaintiff, from decree of C. P. Mercer Co., Oct. T., 1911, No. 3, dismissing bill in equity in case of L. M. Jaxtheimer v. Sharpsville Borough, Karl Smith, Burgess, F. W. King, et al., Councilmen, and William McIntyre & Sons. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction. Before WILLIAMS, P. J.

The court below, after stating the facts as summarized in the opinion of the Supreme Court, discussed the questions involved as follows:

The learned counsel contends that the contract between said borough and William McIntyre & Sons is illegal for the reasons set forth in the fourth and fifth paragraphs of the plaintiff's bill, and these reasons may well be considered in the order stated by the learned counsel.

1. The first reason is stated in the fourth paragraph of the bill, as follows:

"The same day that said ordinance was passed, bids were received and a contract awarded to said William McIntyre & Sons for the paving of that portion of Mercer avenue hereinbefore referred to."

The testimony shows that under the rules adopted by the council of said borough an ordinance must pass three readings before it is presented to the burgess for his approval, and, as stated in our fifth finding of fact, the ordinance here in question was introduced and passed by the council on first reading on June 20, 1911. It appears from the papers before us, although not

shown by the testimony, that said ordinance was passed on second reading on July 18, 1911, and, as shown by the testimony and stated in our ninth finding of fact, was passed on its third reading on August 1, 1911. [On August 15, 1911, the borough engineer and paving committee presented to council for its approval full and complete specifications for paving said Mercer avenue with Tarvia, which, on motion duly passed, were approved by council] (4) and the secretary was directed to advertise for bids for paving said street in accordance with said specifications, said bids to be presented not later than six o'clock P. M. on September 5, 1911.

On the same date that said specifications were approved and the secretary directed to advertise for bids as above stated, the burgess of said borough, as stated in our thirteenth finding of fact, returned said ordinance to the council accompanied by his veto thereof. Said veto was spread at large upon the minutes and said ordinance was then laid over until the next regular meeting of council, to be held on September 5, 1911, as required by said Act of May 12th, 1911. At its next regular meeting, held on September 5, 1911, all of the members of council being present, said council proceeded to a reconsideration of said ordinance and after such consideration it was passed by the unanimous vote of all the members elected to said council; the roll being called and the name and affirmative vote of each of the members of the council entered on the minutes.

On the same date, after the passage of said ordinance over the veto of the burgess, the secretary, by direction of the council, proceeded to open the bids received for said paving in response to the notice to contractors published on August 22, 1911, as directed by council at its meeting held on August 15, 1911. As stated in our seventeenth finding of fact, the bid of said William McIntyre & Sons being the lower of the two bids received for the paving of said street, it was accepted, subject to certain conditions embodied in the motion or resolution

of acceptance, and which, as shown by the minutes of the proceedings, are as follows: "It was unanimously resolved that the bid of William McIntyre & Sons be accepted, subject to the entering into of a contract by them with the Borough of Sharpsville, as provided for in the printed specifications, and the furnishing of bonds by them, as also required by said specifications."

The contention of the learned counsel for the plaintiff is that said bid and the acceptance thereof by the council constituted a contract between said borough and the firm of William McIntyre & Sons for the paving of said Mercer avenue; and that as said ordinance had not been published and posted subsequent to its passage over the veto of the burgess, in accordance with the provisions of Section 3 of the Act of April 3, 1851, said contract is illegal. With this contention we are unable to agree, and to our mind it is wholly based upon the fundamental error of viewing the qualified and conditional acceptance of said bid as a contract. It seems to us that the very terms of the acceptance itself preclude the theory that said bid and its acceptance was to constitute a contract, and clearly evidence the fact that a contract was to be later entered into. That neither the borough authorities nor the firm of William McIntyre & Sons, whose bid was thus accepted, considered said bid and acceptance as a contract is evidenced by the fact that the execution of the formal contract for said paving was deferred until more than ten days had elapsed after said ordinance had been published and posted subsequent to its final passage over the veto of the burgess, as is required by the Act of April 3, 1851.

In 20 Am. & Eng. Ency. of Law, (2nd Ed.), 1170, it is said in reference to municipal contracts: "Though a bid made in response to an advertisement may be the lowest bid therefor, and in all respects regular and valid no contract arises until the acceptance thereof by the city authorities. But where a bid has been accepted and the contract awarded, a binding contract is created, for the

breach of which the city may be liable in damages, although, it has been held, it is not reduced to writing and signed. But a vote accepting a bid is not a contract, where a provision is distinctly made for the future execution of a formal contract."

The last paragraph of the language quoted expressly covers the facts of the case at bar, is directly in point and is decisive against the contention of the learned counsel for the plaintiff. A number of cases are cited in support of the statement quoted, among them being those of Edge Moor Bridge Works v. Bristol County, 170 Mass. 528 (49 N. E. Repr. 918) ; Jersey City Water Commissioners v. Brown, 32 N. J. L. 504; Dunham v. Boston, 94 Mass. 375, and People's Railroad Co. v. Memphis Railroad Co., 77 U. S. 38. We have access only to the two cases last cited, both of which seem to support the language quoted.

Assuming that Section 3 of the Act of April 3, 1851, required the publishing and posting of said ordinance subsequent to its passage over the veto of the burgess it is clear that said ordinance was inoperative until the provisions of said section had been complied with. Hence the council was without power to make a valid contract until said ordinance had been published and posted for at least ten days after its final passage With this provision of said Act of Assembly in mind the borough authorities deferred the execution of the formal contract for said paving until said provision had been complied with.

It is argued by the learned counsel, however, that the validity of said contract is to be determined as of the date when said ordinance was passed over the veto of the burgess and the bid for said paving was accepted by the council; and that nothing done thereafter could validate the formal contract entered into between said borough and the firm of William McIntyre & Sons on September 26, 1911. As we view this case said argument is unsound and is not supported by either reason or authority.

Suppose a borough council should determine to pave a street under the provisions of the Act of 1911, and, in order to expedite the work, should have specifications prepared and advertise for bids for said paving while the ordinance providing for the same was pending in council; and then, when said ordinance had been finally passed and approved, accept the lowest bid received for said work, subject to the making of a formal contract at a later date; and then, in the meantime, between the acceptance of said bid and the execution of the formal contract, have said ordinance published and posted as required by the Act of 1851. What would be irregular or illegal in such proceedings? We are unable to see how the preparation of specifications, the advertising for bids and an acceptance of one of the bids received prior to the publication and posting of the ordinance providing for the work can affect the validity of a formal contract entered into after said ordinance had been published and posted. After the passage of the ordinance over the veto of the burgess in the case at bar, and after the same had been properly published and posted the council undoubtedly could have entered into a valid contract for said work. How, then, can the preliminary work of preparing specifications, receiving bids and the acceptance of one of the bids received, subject to the making of a formal contract, in any way affect said right?

Suppose that after the conditional acceptance of said bid the contractors had expressed their willingness to enter into a formal contract, had tendered the bonds provided for and then demanded that council proceed to join with them in the execution of a formal contract, and the council had set up its lack of authority to make such contract until after said ordinance had been published and posted according to law, what standing would the contractors have had to enforce such a demand? It is clear that they would have no standing whatever; hence the mere acceptance of said bid, either condition-

ally or otherwise, prior to the publication and posting of said ordinance, would not and could not constitute a contract between the borough and the contractors.

In the case of Carpenter v. Yeadon Borough, 208 Pa. 396, an ordinance was passed by council, vetoed by the burgess, and then passed over the veto, but was not published and posted as required by the Act of April 3, 1851. Said ordinance granted to Carpenter the right to use his land in the borough for cemetery purposes under certain conditions one of which was that he pay $6,000 to the borough. The ordinance also provided that a street should be laid out and opened for public use through the land and. that a portion of an avenue near the land should be vacated; that the ordinance should not become operative unless Carpenter should within ten days after its passage execute and deliver to the borough an agreement to comply with the terms of the ordinance and should give security for the payment of the $6,000. It was further provided that the ordinance should not be. published until the execution and delivery of the agreement and the costs of publication had been paid to the borough. The agreement was delivered and the costs of publication of the ordinance were paid to the borough. Carpenter tendered security for the payment of the $6,000, which was declined. He then applied for a writ of mandamus commanding the Borough of Yeadon, the chief burgess and the council of the borough, "to forthwith cause the ordinance of said borough entitled......
and known as Ordinance No. 50, to be published according to law so as to render the same operative or show cause why the same should not be done, or that a rule be granted on said respondents to show causes why a mandamus should not be issued for the purposes aforesaid." The court having overruled a motion to quash the writ and directed the defendants to file a return, the case was tried by the court without a jury under the Act of April 22, 1874, P. L. 109. The court found a "verdict in favor of the plaintiff against the corporate authorities of the

Borough of Yeadon requiring them to advertise and publish Ordinance No. 50 in accordance with the provisions of the third section of the Act of Assembly of April 3, 1851." From the judgment subsequently entered on said finding the defendants appealed.

In reversing said judgment and dismissing the writ of alternative mandamus, Mr. Justice MESTREZAT, speaking for the Supreme Court, said inter alia: "......Publication is a duty imposed upon the corporate officers, and until it is performed no rights are granted, and the observance of no duties is enjoined, by the ordinance which can be enforced by or against the municipality. Before the statute has been complied with in this respect, the ordinance remains in the hands of the officers of the corporation awaiting the performance of an act by them essential to give it validity as a law of the borough.

"Conceding that the purpose and intention of the council was by this enactment, to contract with the plaintiff on the terms therein set forth, yet if publication was necessary to make it operative, as is recognized by the plaintiff in instituting this proceeding, it is apparent that the contract was not consummated and is not yet obligatory on the borough. A statutory prerequisite to its completion and validity is concededly wanting, and the power of the court is invoked to compel one of the parties, the borough, to consummate the agreement. In other words, we are asked to compel the corporate officers of the borough to complete negotiations pending between the parties so that the negotiations will become effective as a contract and obligatory upon the borough. This, in effect, is the prayer of the petition for the mandamus. If, therefore, we award the writ commanding the borough to cause the ordinance 'to be published according to law so as to render the same operative,' as prayed for in this application, the court will compel the execution of an agreement which is simply discretionary with the corporation. This we cannot do. The court will enforce by mandamus the performance of a manda-

tory ministerial duty, but it has no authority to compel a municipal corporation to execute an agreement which is a discretionary act, or to take any steps toward the consummation of such an agreement......" The case from which we.have thus quoted is authority for at least three legal propositions: 1. That as to all ordinances within the third section of the Act of April 3, 1851, the duty to publish and post said ordinances in the manner required by said act is mandatory, and until it has been performed the ordinance remains inoperative. 2. While the duty to thus publish and post such ordinances is mandatory in order to make them valid and operative, the performance of said duty is, nevertheless discretion- ary with the council, in the sense that it may decline to perform it and thus render an ordinance inoperative. 3. Until such an ordinance has been published and posted as required by said act it remains inoperative by the ordinance which can be enforced by or against the municipality.

Applying these principles to the case at bar, it is clear that there was no contract between said borough and the firm of William McIntyre & Sons prior to the formal contract entered into on September 26, 1911, after said ordinance had.become operative by virtue of its having been published and posted for a period of more than ten days prior to said date, as required by the third section of the Act of April 3, 1851.

We are therefore, unable to discover anything in the first reason urged by the learned counsel that would justify a finding that said contract is illegal.

2. The second reason is embodied in the fifth para- graph of the plaintiff's bill, and is there stated as fol- lows:

"Said ordinance had never been advertised since its passage as required by law."

As no question has been raised as to the publication and posting of said ordinance while the same was pend- ing in council, as required by the Act of May 12, 1911, it

is evident that the advertisement here referred to is the publication required by the third section of the Act of April 3, 1851, P. L. 320, 323, which provides, inter alia, as follows:

"IV. To publish in at least one newspaper, if such be printed in the proper county, and by not less than twelve advertisements, to be put up in the most public places in the borough, every enactment, regulation, ordinance or other general law, at least ten days before the same shall take effect."

The learned counsel is evidently mistaken as to this matter, as the testimony of Mr. Graber, the secretary of the borough council, shows that the street commissioner of said borough, acting under his instructions, posted said ordinance on September 9, 1911, which was four days after the final passage of said ordinance over the veto of the burgess on September 5, 1911. The testimony of Mr. Graber further shows that said ordinance was published in the Sharpsville Advertiser on September 13, 1911, which was eight days after its passage over the veto of the burgess on September 5, 1911. These matters are embodied in our eighteenth and nineteenth findings of fact. The presumption is that said publishing and posting was done by direction of the council of said borough, and that it was done in accordance with the requirements of said act of assembly. This reason, therefore, requires no further discussion.

3. The third reason is also embodied in the fifth paragraph of the plaintiff's bill, and is as follows:

"The Burgess and Paving Committee did not procure or prepare any specifications of said paving after the passage of said ordinance or at any other time and did not submit specifications to the Council for their ratification after the passage of said ordinance or at any other time."

The second section of said ordinance is as follows:

"Section 2. The Burgess and Paving Committee are hereby directed to prepare or procure full and complete

specifications of said paving, and advertise for proposals or bids for the contract therefor, which specifications and all proposals and bids received shall be submitted to the Council for their ratification."

The testimony shows, as set forth in our ninth, tenth, eleventh and twelfth findings of fact, that on August 1st, 1911, the council of said borough passed said ordinance on the third or last reading prior to its presentation to the burgess for his approval. [That on August 15, 1911, the borough engineer and the paving committee of the council presented to said council at its regular meeting held on that date, full and complete specifications for the paving of said Mercer avenue.] (3) That on the same date, and at the same meeting, the council approved or accepted same and directed the secretary to have a sufficient number of copies thereof printed and to advertise for bids for paving said Mercer avenue in accordance with said specifications. That the burgess did not act with said paving committee in the preparation or procuring of said specifications. The burgess was present at the meeting of council, however, when said specifications were presented and approved, and the secretary directed to advertise for bids for doing the work in accordance therewith, and made no objections whatever thereto.

[It thus appears that the only omission in the way of a strict and literal compliance with the terms of the second section of said ordinance is that the borough engineer, instead of the burgess acted with the paving committee in the preparation or procuring of said specifications. The direction by the council that said specifications be prepared or procured by the burgess and paving committee relates merely to the form or manner in which said specifications were to be provided, and may, therefore, well be considered as merely directory. The real essence or substance of the thing desired was the specifications, and the manner of obtaining them was a mere incident. Hence when specifications presented by

the borough engineer and the paving committee were considered and accepted by the council the provisions of the ordinance as to that matter were substantially complied with.] (6)    There is no intimation that the burgess had any technical knowledge or special qualifications as to specifications for street paving not possessed by the borough engineer, nor is it alleged that the specifications presented to and accepted by council were not full and complete, or that they were in any manner defective.   We are of the opinion, therefore, that there is nothing in the third reason that renders said contract illegal or invalid.

4. The fourth reason is that:

"Said Burgess and Paving Committee did not advertise for proposals or bids for the contract thereof or submit any proposals or bids to the Council for their ratification after said ordinance was passed or at any other time, as provided by the second section of said ordinance hereinbefore referred to."

[What we have said as to the third reason urged by the learned counsel is equally applicable here.   The testimony shows that at the meeting of August 15, 1911, when said specifications were presented to and accepted by the borough council, said council directed the secretary to advertise for bids of proposals for the paving of Mercer avenue in accordance with said specifications. That in pursuance of said direction the secretary did advertise for bids, and when the bids were received he, by direction of said council at its regular meeting held on September 5, 1911, opened said bids in the presence of council and one of the bids so received was accepted by the council at said meeting.   This we think, was a substantial compliance with the provisions of said ordinance; hence this reason does not require further discussion.]" (7)

As a summary of the facts shown by the testimony, we may say:  That the evidence shows that said ordinance was regularly introduced at a regular meeting

of the council of said borough; that it passed three separate readings at three separate regular meetings of said council; that while said ordinance was pending before said council it was regularly published and posted in the manner required by the Act of May 12, 1911, P. L. 288; that said ordinance was not finally adopted or enacted until after the expiration of more than thirty days after the date of its introduction; [that after said ordinance had passed its third reading the borough engineer and the paving committee of said borough presented to said council full and complete specifications for the paving of said Mercer avenue]; (8) that said council approved said specifications at a regular meeting and directed the borough secretary to advertise for bids or proposals for paving said Mercer avenue in accordance with said specifications; that in pursuance of said direction from the council the borough secretary did advertise for bids or proposals for said work, said bids to be presented not later than six o'clock, p. m., on September 5, 1911; that on August 15, 1911, the burgess of said borough returned said ordinance to the council accompanied by his veto, and said veto was spread at large on the minutes of said meeting, and said ordinance was then laid over until the next regular meeting of the council, to be held on September 5, 1911; that at the regular meeting of said council on September 5, 1911, said ordinance was taken up for reconsideration and, after such consideration, it was passed over the veto of the burgess by the unanimous vote of all the members elected to said council, the roll being called and the name and affirmative vote of each of said members entered upon the minutes of council; that after the passage of said ordinance over the veto of the burgess the borough secretary, by direction of said council, opened the two bids received for said paving, and it appearing that the bid of William McIntyre & Sons was the lower, said council accepted said bid subject to the giving of the bonds and the making of the formal contract required by said specifications; that

said ordinance was thereafter posted on September 9, 1911, and published in the Sharpsville Advertiser on September 13, 1911, as required by the third section of the Act of April 3, 1851, P. L. 320, 323; [and that on September 26, 1911, being more than ten days after the publishing and posting of said ordinance, said borough entered into a formal contract with said firm of William McIntyre & Sons for the paving of said Mercer avenue in accordance with said specifications.] (9)

A decree was entered dismissing the bill.

*Error assigned* was decree dismissing the bill.

*W. C. Pettit,* for appellant.—Matters involving judgment and deliberation on the part of the persons entrusted therewith cannot be ignored or set aside. They are matters of importance which all parties concerned have a right to see are observed: Hoffman v. Pittsburgh, 229 Pa. 36; Bullitt v. Philadelphia, 230 Pa. 544.

The contract was premature: Clark v. Martin, 49 Pa. 289; Warren & Franklin Railway Co. v. Land & Imp. Co., 54 Pa. 28; Cox v. Connellsville Borough, 22 Pa. C. C. R. 657; Com. v. Beaver Borough, 171 Pa. 542; Tunkhannock Borough Exten., 3 Pa. C. C. R. 480.

*J. P. Whitla,* with him *Thomas H. Armstrong* and *Horace W. Davis,* for appellees.—Where parties are merely negotiating as to the terms of an agreement to be entered into between them, there is no meeting of minds while such agreement is incomplete: Hepburn v. Philadelphia, 149 Pa. 335; Smart v. Philadelphia, 205 Pa. 329; Carpenter v. Yeadon Borough, 208 Pa. 396.

There was no irregularity in the preparation of the specifications for the paving.

OPINION BY MR. JUSTICE POTTER, January 6, 1913:

This was a bill in equity filed by L. M. Jaxtheimer, a citizen and taxpayer of the Borough of Sharpsville,

Mercer County, Pa., in which he sought to restrain the borough authorities from carrying out a contract with the firm of William McIntyre & Sons, for the paving of Mercer avenue, under authority of an ordinance passed by the borough council on September 5, 1911, over the veto of the burgess, in pursuance of the Act of May 12, 1911, P. L. 288. It is conceded that the ordinance was regularly adopted, but the legality of the contract for paving, made in pursuance thereof, is questioned. The trial judge made full and complete findings of facts, and concluded that the provisions of the Acts of 1851 and 1911 have been complied with by the borough authorities, and that the plaintiff's bill should therefore be dismissed. Exceptions were filed to the findings of the trial judge which were overruled, and the final decree was entered dismissing the bill. The plaintiff has appealed. We think that the thorough discussion of the questions involved by the trial judge, amply justifies his conclusion, and leaves but little for us to add.

The first objection is that the contract was made too soon, that is, before the ordinance had been posted and advertised for a period of ten days after its final passage, as required by the Act of April 3, 1851, Sec. 3, P. L. 320. The validity of this objection depends upon whether the contract with William McIntyre & Sons is to be regarded as having been entered into by the passage by the council of a resolution of acceptance upon September 5, 1911, or whether the real contract for paving was made upon September 26, 1911, which was the date upon which the written contract was executed. It appears from the seventeenth finding of fact by the trial judge that on September 5, 1911, after the passage of the ordinance over the veto of the burgess, bids for paving were received and opened, and "it was unanimously resolved that the bid of William McIntyre & Sons be accepted, subject to the entering into of a contract by them with the Borough of Sharpsville, as provided for in the printed specifications." We agree entirely with the

court below, that the terms of the acceptance itself clearly imply that a contract was not intended to be entered into at that time, and that they show with equal clearness that a contract was to be entered into later on. The words of the resolution clearly contemplate the formal execution of a contract in accordance with the printed specifications, and the furnishing of bonds, as required by the specifications. A formal contract in strict conformity to these requirements was entered into between the borough and the firm of William McIntyre & Sons, on September 26, 1911, twenty-one days after the passage of the ordinance, nineteen days after its posting, and thirteen days after its publication. The work whose performance appellant here sought to enjoin, is to be carried out under this written contract of September 26, and not under any agreement arising out of the formal acceptance of the bid upon September 5th. That was evidently but a step in the negotiations intended to lead to a written contract which would fully comply with the specifications. A satisfactory statement of the law applicable to such a situation is found in 9 Cyc. 267, where it is said: "An acceptance, to be effectual, must be identical with the offer and unconditional. Where a person offers to do a definite thing and another accepts conditionally or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat or it is a counter proposal and in neither case is there an agreement." The case of Sparks v. Pittsburgh Co., 159 Pa. 295, illustrates the principle. There the plaintiff made a written proposition to drill oil wells. At the end of the proposition the officers of the defendant company wrote, "Accepted, contract to be drawn in accordance with the above proposition or bid." And the following words were added: "This is about right and will be satisfactory to the Pittsburgh Company." This court, speaking by Mr. Justice THOMPSON, said: "The appellant's contention is that the proposition itself constituted the contract,

and the sinking of those wells at Ellwood the breach of it." The language at the end of the proposition, to wit, "Contract to be drawn in accordance with the above proposition or bid," and "This is about right and will be satisfactory to the Pittsburgh Company" clearly imports that it was not intended to be the actual agreement, but simply the basis of one, to be subsequently perfected by a contract properly prepared. In the present case we think it is equally clear that the resolution of acceptance adopted by the council, was only intended as authority for the making of the written contract which was executed on September 26, at which time the ordinance had been posted and advertised more than the required ten days.

Another ground of objection to the contract is that while it was provided in the ordinance that the specifications for the paving should be prepared or procured by the burgess and paving committee of council, they were in fact prepared or procured and reported to council by the borough engineer and the street committee. We see no merit in this objection. The court below found, as set forth in its opinion on the exceptions, from testimony taken after the original findings were made, that there was no special paving committee of the borough council, and that what was intended by that term, was the standing street committee; and that for the current year, the street committee and the paving committee were one and the same, and made up of the same members of the borough council. Whether the burgess or the borough engineer acted in preparing the specifications was of no special consequence. The committee were authorized either to prepare or procure specifications, and this gave them the right to call for such assistance as they might desire. We agree with the trial judge that the terms of the ordinance in this respect were merely directory, and we think that the council had the right to accept such specifications as seemed to them most fit, whether presented by the street committee or

obtained from some other source. If the burgess and the committee, in literal compliance with the terms of the ordinance, had united in preparing and reporting specifications, it was still within the power of the council to reject such specifications, and to obtain and adopt others from another source.

The assignments of error are all overruled; and the decree of the court below is affirmed.