Morganstern Electric Company, Appellant, *v.* Coraopolis Borough.

Argued March 25, 1937.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*E. B. Strassburger,* with him *E. J. McKenna,* of *Strassburger & McKenna,* for appellant.

*William S. Rahauser,* Borough Solicitor, and *Rahauser, McEwan, Van Der Voort & Royston,* for appellee.

*Philip R. McLaughlin,* of *Campbell, Wick, Houck & Thomas,* for intervening appellee.

156

By an ordinance of council approved by the burgess on August 7, 1933, the Borough of Coraopolis, defendant in the present action, enacted, "That a municipal overhead electric street lighting system be constructed, erected and operated on the streets, lanes, roads, highways and alleys of the Borough of Coraopolis," and "That the proper officers of the Borough be and they are hereby authorized and directed to advertise for and procure bids for said construction and erection. . . ." On October 2, plaintiff submitted a bid in writing to construct the lighting system for $52,852.90, offering "on the acceptance of this proposal to enter into and to execute a contract in the form of said enclosed specifications . . .," and further stating that "if this proposal is accepted the undersigned agrees to contract with the Borough of Coraopolis, Pennsylvania, in accordance with the specifications and contract form hereto annexed." On October 30, council passed a resolution that the contract "be and the same is hereby awarded to the Morganstern Electric Co., Inc., at their bid," and "That the proper officers of the Borough be and they are hereby authorized and directed to enter into a contract with the said Morganstern Electric Co., Inc., for the work as provided for in the plans and specifications, approved by Council, and in accordance with the terms of their bid for said work," plaintiff first to give a bond for faithful performance in the sum of 20% of the contract price. This resolution, vetoed by the burgess, was passed by council over the veto on November 16, but at the same meeting a motion was made and carried that the officers of the borough should not sign the contract until December 1. On November 29 another resolution was passed postponing the signing of the contract until December 19; on December 18 the signing was again directed to be postponed "until ordered by council," and on June 4, 1934, the ordinance awarding the contract was repealed. Plaintiff's present suit is to recover the

loss of profits which it alleges it would have earned had it been allowed to perform the work for which its bid was accepted.

Confronted by the obvious weakness of its position in that the proposed final contract between the parties was not executed, plaintiff contends that its written bid of October 2, coupled with the resolution of council of October 30, which was reduced to writing and signed by the president of council and attested by the secretary, constituted a contract sufficient in law upon which to base a right of action.

It is true that where the terms of a contract are definitely agreed upon, legal obligations may arise even though it be the understanding of the parties that a formal contract is subsequently to be executed: *Taylor v. Stanley Co. of America*, 305 Pa. 546. It is also true that in *Lansdowne v. Citizens Electric Light & Power Co.*, 206 Pa. 188, upon which plaintiff heavily relies, it was held that the borough's acceptance of a bid created a contract upon which it could sue the bidder, even though a contemplated formal contract in writing was never executed. There is a defect in plaintiff's case, however, which eliminates the *Lansdowne* decision as a controlling precedent. There, the bidder was notified by the borough of its acceptance of the bid; here, the borough's acceptance was not communicated to plaintiff. It is elementary that no obligation is created by the acceptance of an offer unless and until it is transmitted to the offeror. It is immaterial, in this regard, that the acceptance in the present case was embodied in an ordinance of the borough council. That ordinance, as plaintiff admits, was not legislative in character but merely a ministerial act.* The same legal requirements applied as to the making of any other contract. The

---

* *Howard v. Borough of Olyphant*, 181 Pa. 191; *Lansdowne v. Citizens Electric Light & Power Company*, 206 Pa. 188; *Wilkes-Barre Connecting R. R. Company v. Kingston Borough*, 319 Pa. 471, 474.

ordinance could confer no contractual rights upon plaintiff until defendant, with the intent and for the purpose of creating a contract, informed plaintiff that it accepted plaintiff's bid. The reason for its failure to do so is apparent. It did not desire to commit itself definitely and finally to the proposed erection of a lighting system. As already stated, at the same time at which it passed the resolution awarding the contract, it adopted a motion directing the borough officers not to proceed with the execution of the written agreement until a subsequent specified date, showing clearly that it had in contemplation further consideration of the subject and did not intend its mere resolution to create any contractual obligation.

There is another reason why the *Lansdowne* case is not an authority governing the present situation. Since it was decided, the Act of April 14, 1921, P. L. 147, has been passed, providing "That all contracts . . . made by any borough involving an expenditure of over five hundred dollars ($500) shall be in writing, . . ." This requirement was carried into the General Borough Act of May 4, 1927, P. L. 519, section 1202, cl. LIII, and it must be understood as meaning that before a borough can be charged with contractual liability there must be, not merely the passage of an ordinance or resolution awarding a contract (even though such ordinance or resolution itself be reduced to written or typed form in the minutes of council or in the borough's ordinance book), but a final contract in writing executed by the parties. Indeed, to hold that this provision is satisfied if the resolution of council accepting the bid is in writing, would stamp it as unnecessary and without purpose, since a borough council is compelled in any event, by sec. 1006, cl. II, of the General Borough Act "to make and preserve full records of their proceedings." Nor would such a construction give to the borough the protection which this legislation was manifestly designed to afford. Such a provision is not merely directory but

mandatory; it must be strictly complied with; no liability can be imposed upon the borough by an agreement entered into in any other form. "He who deals with a municipality must recognize that it can contract only upon such terms as the legislature has seen fit to prescribe": *Commonwealth v. Jones*, 283 Pa. 582. "The authority of a municipal body to legislate or to contract . . . must be exercised in the manner provided in the statute conferring it": *Carpenter v. Yeadon Borough*, 208 Pa. 396; *Wilkes-Barre Connecting R. R. Co. v. Kingston Borough*, 319 Pa. 471.

On the whole the present case is ruled by *Hepburn v. City of Philadelphia*, 149 Pa. 335; *Smart v. Philadelphia*, 205 Pa. 329; *Jaxtheimer v. Sharpsville Borough*, 238 Pa. 42; and *Day v. Ryan*, 245 Pa. 154, all of which held that no contract was created under circumstances similar to those here existing.

Defendant points out another valid reason why plaintiff cannot sustain its claim. Section 2479 of the General Borough Act provides that "Before any borough shall construct an electric light plant . . ., the question of the increase of the debt of such borough, for any of such purposes, shall first be submitted to the qualified voters of the borough, in the manner provided by law for the increase of indebtedness of municipal corporations." Here, such assent by the voters was not sought nor obtained. Plaintiff contends that the work for which it bid was not the "construction" of "an electric light plant," and therefore a preliminary submission to the electorate was not requisite. This contention rests upon the fact that the Borough of Coraopolis owned and operated its own waterworks plant and seems to have contemplated that that plant would furnish sufficient electric energy for street lighting purposes. It appears, however, that, while some of the equipment already installed in the waterworks plant could be incorporated in the new project, it would be necessary to construct an overhead lighting system and to install a

Diesel engine generator unit, together with switchboard and incidental wiring, the existing equipment being sufficient to take care only of the waterworks requirements. As the court below said: "The fact is that had the proposed changes been made they would have produced an electric light plant in addition to the water-plant already in existence." Plaintiff calls attention to the fact that the voters once authorized an increase of indebtedness for an electric light plant; but that was in 1925 in connection with the proposed remodeling of a plant then owned by the borough but subsequently sold to a public utility company. That project and the vote taken thereon have no relevancy to the present situation.

A final obstacle to plaintiff's recovery results from its failure to tender a bond for performance. The General Borough Act, section 1202, clause LIII, provides that "The successful bidder . . . shall be required to furnish a bond, with sufficient surety, in the amount of fifty per centum of the amount of the contract, within ten days after the contract has been awarded, and, upon failure to furnish a bond within such time, the previous award shall be void." The ordinance of October 30 called for a bond in the sum of only 20% of the contract price, and therefore was not in compliance with the statutory requirement. Apart from this, plaintiff did not, either within ten days after the award of the contract or at any other time, furnish or tender any bond whatever. It seeks to excuse this failure by testimony that the borough solicitor told it that it need not furnish a bond until notified to do so. The date of this alleged conversation was not fixed; there was no suggestion that it occurred within the ten days' period. Moreover, the borough solicitor would have had no authority to waive the statutory requirement.

The court below, after trial of the issue, entered judgment for defendant notwithstanding the verdict rendered by the jury in favor of plaintiff. The court was right in so doing, and the judgment is affirmed.