## Francis v. Luitweiler

*Thomas F. Goldman*, for plaintiff.
*T. Sidney Cadwallader, II*, for defendants.

LUDWIG, *J.*, October 1, 1975—On April 17, 1975, plaintiff, Leo Francis, filed a petition seeking to enjoin defendant, Warminster Heights Development Corporation, from accepting a bid on a trash collection contract. The petition averred that defendants had already awarded the contract to him as the result of a previous bid and award. Defendants filed an answer denying that they were bound by the earlier bidding and alleged, in new matter, that Francis had refused to abide by the advertised specifications. Pursuant to a stipulation of fact, we enter the following adjudication and decree nisi under Pa.R.C.P. 1517(a).

## ISSUES

The issues in this action are: Was plaintiff's initial bid a valid offer? If so, was it accepted by defendants?

## FINDINGS OF FACT

1. Plaintiff is Leo Francis, who operates a trash collection business at 14 Margin Turn, Levittown, Pa., which business is sometimes known as "Francis Waste."

2. Warminster Heights Development Corporation is a corporation with offices at the Warminster Heights Community Center, 75 Downey Drive, Warminster, Pa. Whether it is a business or non-profit corporation, and where it was organized, are not disclosed in the pleadings or stipulation as to the facts.

3. Preston Luitweiler is the executive director of the Warminster Heights Development Corporation.

4. Richard Hoffman is chairman of the Board of Directors of the Warminster Heights Development Corporation.

5. In March 1975, the Warminster Heights Development Corporation desired to enter into a trash collection contract and for this purpose advertised a solicitation for bids, which included a set of contract specifications.

6. The original specifications were duly advertised on March 5 and March 10, 1975, in a newspaper known as "Today's Spirit," published in Hatboro, Pa.

7. Several persons, including plaintiff, obtained and paid for the specifications.

8. On March 20, 1975, at about 11 a.m., an envelope addressed to "Warminster Housing Authority" showing a return address "Francis Waste, 14 Margin Turn, Levittown, Pennsylvania" and further marked "bid sheets" was delivered personally by plaintiff to Jeanne Cotton, who was acting in her capacity as coordinator of the Warminster Heights Community Center and as a duly authorized representative of the Warminster Heights Development Corporation empowered to receive such bids.

9. At about 2:30 p.m., on March 21, 1975, bids were opened by Preston Luitweiler, Director, and Edward Hobson, Business Manager of the Warminster Heights Development Corporation, but not including plaintiff Francis' bid.

10. On Friday evening, March 21, 1975, upon re-checking with Jeanne Cotton, Preston Luitweiler discovered that the bid received from Francis had been placed by her in a drawer and forgotten.

11. On Monday morning, March 24, 1975, the sealed envelope containing plaintiff's bid was opened in the presence of Jeanne Cotton and Edward Hobson.

12. This was by far the lowest total bid. On the second bid item, it was nearly the same as the nearest comparable bidder, and on the other major item of roll-off containers, it was $15 a load higher than two other bidders. However, the net amount by which plaintiff was the lowest bidder was approximately $5,000, and the bid specifications contemplated a single, indivisible contract award.

13. On Tuesday, March 25, 1975, the board of the Warminster Heights Development Corporation authorized officials of the Warminster Heights Development Corporation, including Preston Luitweiler, to execute a contract with plaintiff, Francis, conditioned upon a determination of the specific days upon which he was to provide the twice weekly pick-up of household trash for all occupied dwelling units in Warminster Heights and for the rental office premises as called for in the bidding specifications.

14. On Tuesday, March 25, 1975, Luitweiler called Francis and advised him that his bid was the low bid of all those submitted and that it had been awarded to him.

15. On Thursday, March 27, 1975, Luitweiler called Francis to advise him that twice weekly pick-ups were required by the specifications, and they discussed this without deciding upon specific days. At all times, Francis was, and is, prepared to make such pick-ups.

16. On Tuesday, April 1, 1975, the Warminster Heights Development Corporation Board decided to reject all bids because plaintiff's bid had originally been mislaid and the board was concerned that its award might, therefore, have been improper.

17. The corporation's invitation for bids reserved

to it the right to reject any and all bids or any part thereof and to waive any informalities in the bid.

18. The invitation for bids specified that all bids to be considered must be delivered to the corporation at either the Warminster Heights Rental Office or the Warminster Heights Community Center at or before noon on March 21, 1975.

19. Warminster Heights Developement Corporation readvertised for bids under changed bidding specifications with the advertisements calling for bids to be opened on April 18, 1975. Plaintiff thereupon brought this action in equity and did not bid on the second advertisement. Bids received in response to this invitation were not made public nor was an award made based upon the bids received, and these bids are no longer considered available or valid by Warminster Heights Development Corporation.

## DISCUSSION

Two questions present themselves in the facts of this case. Was it proper for the Warminster Heights Development Corporation to award the trash collection contract to plaintiff even though his bid was mislaid and not opened until several days after the other bids? If so, was the decision to make the award, once orally communicated to plaintiff, binding upon the corporation in the absence of an executed contract in writing?

The invitation for bids contained an express reservation of the right to reject any and all bids. The corporation was, therefore, not required to accept any of the bids initially opened: Fraim v. Lincoln University, 428 Pa. 436, 438, 239 A. 2d 305 (1968). That plaintiff's bid was mislaid is of no legal significance. The important facts are that the bid

was delivered within the time limitation of the invitation, to the proper place and to a person authorized to receive bids by the invitor. These circumstances constituted delivery to the corporation. Once this occurred, the failure of the corporation's employe to place the bid with the other bids, or its not being available to be opened with them, cannot be held against plaintiff.

Moreover, the right to reject the bids was terminated when the corporation's director notified plaintiff that the contract had been awarded to him. See Smith v. Kaufman, 30 Pa. Superior Ct. 265, 270 (1906). Since all of the essential terms of the contract were embodied in the bid, notice of the award amounted to the corporation's acceptance of plaintiff's offer. See Morganstern Electric Company v. Coraopolis Borough, 326 Pa. 154, 157, 191 Atl. 603 (1937); Lansdowne v. Citizens Electric Light and Power Co., 206 Pa. 188, 192, 55 Atl. 919 (1903). Cf. Field v. Golden Triangle Broadcasting, Inc., 451 Pa. 410, 418-19, 305 A. 2d 689 (1973).

No discrepancy or dispute existed as to the requirement of twice weekly pick-ups, and plaintiff stood ready to comply with this contractual obligation. His offer and the corporation's acceptance did not depend, therefore, on the resolution of a condition. See Field v. Golden Triangle Broadcasting, Inc., supra, at page 418; nor was it necessary that the contract be reduced to writing. "The later instrument, rendered impossible of execution because of defendant's own act, was not a prerequisite to right of action by plaintiffs.": Moudy v. West Virginia Pulp and Paper Co., 385 Pa. 39, 43, 121 A. 2d 881 (1956).

In the present case, the corporation's rejection of all of the bids prevented the reduction to writing of

the contract already awarded to plaintiff. However, at that point, the corporation, after having accepted plaintiff's bid, was powerless to reject it. Cf. Modany v. State Public School Building Authority, 417 Pa. 39, 45, 208 A. 2d 276 (1965). To hold otherwise would be to undermine the element of certainty essential to the law of contracts and would permit collusive action between invitors and unsuccessful bidders. See Colella v. Allegheny County, 391 Pa. 103, 110, 137 A. 2d 265 (1958).

## CONCLUSIONS OF LAW

1. Equity has jurisdiction over the subject matter, and the parties are properly before the court.

2. The stipulated facts establish the following:

a. That plaintiff Francis' bid on March 20, 1975, was timely and in accordance with the published specifications;

b. That his was the low bid;

c. That his bid was accepted by Warminster Heights Development Corporation, acting through its duly authorized employe.

3. Defendants have not shown Francis to have been in default or in breach so as to excuse or vitiate their acceptance of his bid or otherwise render it unenforceable against them.

4. Defendant, Warminster Heights Development Corporation, is bound by their acceptance of Plaintiff's bid communicated to him on March 25, 1975.

5. Plaintiff is entitled to specific enforcement of the contract between himself and defendant, Warminster Heights Development Corporation.

## DECREE NISI

And now, October 1, 1975, defendants, Preston Luitweiler, Richard Hoffman and Warminster Heights Development Corporation, and each of them, are enjoined from soliciting, accepting and awarding any new bids on this waste collection contract. Warminster Heights Development Corporation is hereby ordered to award the contract to plaintiff, Leo Francis, as qualifying bidder whose bid was accepted by it in the original bidding solicitation.

The prothonotary is directed to notify the attorneys of record of the filing of this adjudication, and if exceptions are not filed within 20 days after such notice to enter the decree nisi, on praecipe, as the final decree.