## Colella, Appellant, *v.* Allegheny County, Appellant.

Argued October 8, 1957, Before Jones, C. J., Bell, Chidsey, Musmanno, Arnold, Jones and Cohen, JJ.

*Frank R. Bolte,* for plaintiff.

*Hamilton A. Robinson* and *Dickie, McCamey, Chilcote & Robinson,* for additional plaintiff.

*Nathaniel K. Beck,* County Solicitor, and *Philip Baskin,* Assistant County Solicitor, with them *Arthur L. McLaughlin, III,* Assistant County Solicitor, for defendant, County of Allegheny.

Opinion by Mr. Justice Bell, January 8, 1958:

Plaintiff, a contractor, filed a bill of complaint in equity against the County of Allegheny seeking a can-

cellation and return of its bid bond. The County of Allegheny brought in, pursuant to petition and order of the Court, the Fidelity and Deposit Company of Maryland, which was surety on the bid bond. The County of Allegheny subsequently filed an answer and new matter in which it demanded from the plaintiff and his surety damages in the amount of $69,100, being the actual loss suffered by it, of which amount plaintiff as principal and his surety were liable under the bid bond in the face amount of the bond, viz., $17,500. The Chancellor thereupon held a hearing, made findings of fact and conclusions of law and entered a decree from which each party has taken an appeal.

Pursuant to statutory requirements, Allegheny County by public advertisement invited bids, to be opened June 27, 1950, for a contract for a sewage disposal plant at the Greater Pittsburgh Airport. On June 27, 1950, A. J. Colella, Inc. submitted its *sealed* bid *and its bid bond* in the sum of $17,500 with Fidelity and Deposit Company of Maryland as the surety, conditioned upon the bidder not withdrawing its bid within sixty (60) days after the opening of the bids, *and entering into a written contract with the County* within ten (10) days after the prescribed forms shall have been presented to it for signature. The bond was to remain in effect (1) in the event of the withdrawal of the bid within the sixty (60) days, and (2) upon failure of Colella to enter into a contract with the County, accompanied by a performance bond (in a much larger amount), and (3) upon failure of Colella to pay the difference between the bid amount and the amount which the County would be forced to pay for the work if Colella defaulted.

On June 27, 1950 when the bids were opened, Colella's bid was in the amount of $144,900 and the next

two lowest bidders were in the amount respectively of $218,995 and $233,000. Colella was determined to have been the lowest responsible bidder complying with the specifications.

On July 5, 1950, Colella, orally and in writing, notified the County that because of a clerical mistake* in submitting its bid it desired to withdraw its bid and requested the return of the bid bond. The County refused this request and on July 11, 1950 awarded the contract to Colella at its bid price of $144,900; and by letter dated July 12, 1950 the County notified Colella of the award and requested Colella to enter into the contract and execute all other documents in accordance with the requirements of the bid.

Colella refused to enter into a contract with the County after notice of the award, and as a result the County was compelled to re-advertise for the contract and to accept a bid and subsequently enter into a contract for the work with Dick Construction Company for $214,000.

The Chancellor found, and we believe correctly, that the *mistake was unilateral and was the result of negligence* on the part of Colella. The Chancellor further found, and we believe correctly, that when the sealed bids were opened the County of Allegheny was not aware, nor did it have any knowledge of any clerical mistake in Colella's bid. Two questions arise: (1) was Colella entitled to a withdrawal of its bid and cancellation of its bid bond, and (2) if not, is Colella's liability and its surety's liability limited to the amount of the bond, namely, $17,500 as liquidated damages, or

---

* Colella stated that its bid should have been in the sum of $194,900 and that the error of $50,000 resulted from an error in the worksheet of Colella which was hastily compiled, i.e. an item for concrete read $44,019 instead of $94,019.

to the actual loss suffered by Allegheny County as a result of the bidder's default, namely, $69,100.*

The lower Court held that Colella could not withdraw his bid, but that its liability was limited to the bid bond, namely, $17,500 and not to the actual loss sustained by the County. Each side appealed.

If a person, firm or corporation submits a sealed bid on public works, the principle contended for by the contractor, namely, that after all the bids are opened he can withdraw his bid under the plea of a clerical mistake, would seriously undermine and make the requirement or system of sealed bids a mockery; it could likewise open wide the door to fraud and collusion between contractors and/or between contractors and the Public Authority. What is the use or purpose of a sealed bid if the bidder does not have to be bound by what he submits under seal? What is the use or purpose of requiring a surety bond as further protection for the public, i.e. the municipality, if a bidder can withdraw his bid under plea of clerical mistake, whenever he sees that his bid is so low that he must have made an error of judgment?

Moreover, the Instructions to Bidders and Standard Contract Provisions, which were a material part of the contract between the parties provides: "The Bidder will be permitted to withdraw his proposal after it has been deposited with the Controller, provided he makes his request in writing to the Commissioners; and at the time of opening of proposals when such proposal is reached it will be returned to the bidder unread. Any request pertaining to the withdrawal of a proposal shall reach the office of the Commissioners not later than

---

* Allegheny County concedes that the liability of Colella and of the Surety Company under the terms of the bond is limited to the amount of the bid bond, namely, $17,500.

the day previous to the date set for the opening thereof. *Otherwise, a bid may not be withdrawn after the time set for the opening of bids.*"

In support of its contention Colella cites Pomeroy's Equity Jurisprudence, Fifth Edition, 1941, Volume III, Section 870(a). Pomeroy thus states the law, page 388: "However, equitable relief by way of rescission may be given if the mistake relates to a material feature of the contract; if it is of such grave consequence that enforcement of the contract as made will be unconscionable, if it occurred notwithstanding the exercise of ordinary diligence by the party making the mistake, and if the other party can be put in status quo, Equity will grant relief." The latter two conditions are not present in the instant case.

Notwithstanding the fact that there is a split of authority among the Courts of our sister States on the issue here involved, we are convinced that it would be contrary to the public interest to permit a bidder to withdraw or cancel his bid or his bid bond under the circumstances of this case.

Allegheny County contends that Equity should decree a recovery in its favor against both the principal and the surety in the amount of the County's actual loss, namely, $69,100. Assuming that Equity has jurisdiction to determine this issue which would ordinarily arise in an action of assumpsit, we believe this would be contrary to the intention of the contracting parties.

The bid bond provides in pertinent part: ". . . if the principal shall not withdraw said bid within the period specified . . . and shall . . . enter into a written contract with the County of Allegheny in accordance with the bid accepted, and give bond with good and sufficient surety . . . for the faithful performance and proper fulfillment of such contract, or in the event of the

withdrawal of said bid . . . or the failure to enter into such contract and give such bond . . . if the principal shall pay the County of Allegheny the difference between the amount specified in said bid and the amount for which the County of Allegheny may procure the required work . . . then the above obligation shall be void . . ., otherwise to remain in full force and virtue."

The Instructions to Bidders provides: "B-3. Bidder's Surety. Each bidder is required to file with his Proposal a bidder's bond (or a certified check) in an amount not less than ten per cent of his bid price, . . . to indemnify the County against *all* loss, damage, cost and expense if the bidder shall not effectively execute the Contract . . ., with surety as required therein, and all other Contract Documents required to be executed by him . . ."

An analysis of this bond and the Instructions to Bidders make it clear that if a contract is tendered to the bidder and refused, and if the amount of the final cost exceeds the bid, and the bidder does not pay the difference, then the bond shall remain in full force and effect. In other words, it is clear and we believe it is conceded by the County that the amount of recovery *on the bid bond* is limited to the amount of the bid bond, and not to the amount of loss resulting from failure to execute and perform a contract.

However, the County of Allegheny contends, we repeat, that entirely apart from recovery on the bid bond, it can recover from Colella (and possibly from the Surety Company) all losses and damages which were sustained by the County as a result of re-letting or completing the work in question. On this important issue, the Court below found: "In the letting of contracts such as were proposed and here involved two bonds are required—first, a bidder's bond which the bidder files in connection with his bid. If a contract

is awarded to the bidder in connection with the execution of his formal contract for the performance of the work, *a second bond in a much larger amount,* which is called a *performance bond,* is then filed." What would be the use and purpose of requiring a *performance* bond in a much larger amount than the bid bond, *if the contractor's bid* and/or his accompanying bid bond were intended by the parties to subject him to *all* losses which were sustained by the County as a result of re-letting a contract for the work in question? Because these two bonds were required—covering apparently the exact situation which has arisen—isn't it more reasonable and equitable (because of possible clerical or human errors which would result in losses far beyond the contemplation of the parties) to hold that the parties *intended* the bid bond to constitute liquidated damages and limit the County's recovery thereto, if the contractor failed to subsequently enter into a formal contract and give a performance bond for the work in question?

While authorities from the Courts of our sister States can be found to support the contentions of each party hereto,[*] we believe that the public interest can be protected and justice rendered to all the contracting parties involved by holding that the bidder and its surety are liable only for the amount of the bid bond, when the bidder cancels its bid before entering into a contract with the County even though the loss greatly exceeds the amount of the bid bond.

The decree of the lower Court is affirmed. Each party shall pay their respective costs.

---

[*] We have likewise considered Section 503 of the Restatement of the Law of Contracts.