## Modany, Appellant, v. State Public School Building Authority.

Argued November 12, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edward E. Knauss, III*, with him *Metzger, Wicker-sham & Knauss*, for appellants.

*James W. Evans,* for State Public School Building Authority, appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 16, 1965:

Gabriel Modany, trading and doing business as Modany Brothers, and the American Casualty Company, brought an action in equity to enjoin the State Public School Building Authority from proceeding on Modany's bid for the construction of a school building, and to declare the Modany bid null and void.

The State Public School Building Authority advertised for bids for the construction of the Baden Economy Joint School District in Beaver County. The advertisement provided the instructions and conditions of the job and, in addition thereto, provided the manner of submitting the bid and the manner of withdrawal of the bid. The instructions provided that a bid could be withdrawn when the bidder or his agent would personally appear at the Authority office with a written request to withdraw, prior to the time set for the opening of the bids.

On October 4, 1960, appellant, Modany, had completed the preparation of his bid. At 5:10 o'clock, E.D.S.T. on October 4, 1960, Albert Modany, the son of and agent of Gabriel Modany and the person responsible for the preparation of the bid, delivered the bid, together with a bid bond in the penal sum of $13,-000,[1] to the architect for the job, at his office in Ellwood City, with instructions to deliver the bid to the Authority's office in Harrisburg. This the architect did, at 9:45 o'clock, E.D.S.T. on October 5, 1960. Sometime during the evening of October 4, after the bid had been delivered to the architect, Albert Modany discovered that he had omitted an approximate $120,000 item

---

[1] The surety on the bid bond is the American Casualty Company of Reading, Pennsylvania, one of the appellants.

from the bid. Albert Modany, then being unable to contact Mr. McCandless, the architect, by telephone, made no further effort to withdraw the bid until about three hours later, when he returned from visiting his wife in the hospital. He then sent a telegram to the authority at its main office in Harrisburg to the attention of the architect. This telegram was sent at 9:20 P.M., E.D.S.T. on October 4, 1960. The telegram stated that the bid was to be withdrawn, but did not mention a mistake had been made. At 10:05 A.M., E.D.S.T. on October 5, 1960, twenty five minutes prior to the opening of the bids, the contents of the telegram were made known to the counsel for the Authority, the executive director of the Authority, and an employee of the Authority authorized to receive bids. At 10:30 A.M., E.D.S.T. October 5, 1960, all of the bids were opened. The appellant's bid was $211,700. The next lowest bids were $342,800 and $346,495. The appellant's bid being then the lowest, his bid was accepted.

The appellant then sought to enjoin the Authority from acting on his bid and to have the bid declared null and void, because it had been withdrawn. The lower court had before it for consideration the effectiveness of the withdrawal of Modany's bid and whether rescission of the contract should be decreed if the bid withdrawal was not effective. The court denied relief and dismissed the complaint and that adjudication was affirmed by the court en banc. This appeal followed.

On appeal from a final decree in equity, the findings of fact of the chancellor, affirmed by the court en banc, have the force and effect of a jury verdict and will not be reversed if there is adequate evidence to sustain them and if they are not premised on erroneous inferences and deductions or an error of law. *Schwartz v. Urban Redevelopment Authority,* 416 Pa. 503, 206 A. 2d 789 (1965). Our review of the instant

record convinces us that the facts, as found by the chancellor, affirmed by the court en banc and outlined hereinabove, are amply supported by the evidence and they will not be disturbed here. Of course, the chancellor's conclusions of law or ultimate fact, being his reasoning from the underlying facts, are fully reviewable on appeal. *Shydlinski v. Vogt,* 406 Pa. 534, 179 A. 2d 240 (1962); our review, however, discloses no error.

The State Public School Building Authority Act[2] provides that construction contracts shall be awarded to the lowest responsible bidder.[3] The Authority is also authorized to make rules and regulations for the submission of bids.[4] The authority, pursuant to the provisions of the Act, adopted "Instructions to Bidders", which had been received by Modany. The provision of the Instructions to Bidders, here relevant, provides that: "WITHDRAWAL OF PROPOSALS 13. Bidders will be given permission to withdraw any proposal after it has been received by the State Public School Building Authority, provided the bidder, or his agent duly authorized to act for him, personally appears at the office of the State Public School Building Authority with a written request prior to the time set for the opening of bids. At the time set for the opening of proposals the withdrawn proposal will be returned to the bidder. Such proposal will not be publicly read at the bid opening."

---

[2] Act of July 5, 1947, P. L. 1217, 24 P.S. §791.1 et seq., as amended.

[3] Id. §10: "If any project or any portion thereof, or any improvement thereof, shall be constructed pursuant to a contract, and the estimated cost thereof exceeds $500.00, such contract shall be awarded to the lowest responsible bidder after the advertisement for bids once a week . . ."

[4] Id. §10: "The authority may make rules and regulations for the submission of bids and the construction or improvement of any project or portion thereof."

"FAILURE TO EXECUTE CONTRACT 21. If the lowest responsible bidder to whom the contract is awarded fails to give bonds or execute the contract within the time specified in the proposal, the amount of the proposal guaranty shall be forfeited to the State Public School Building Authority, not as a penalty but as liquidated damages." Modany's telegram read: "REFERENCE CONTRACT A10-675-1 REQUEST WITHDRAWAL OF OUR BID—". There was no other effort made by Modany to withdraw his bid nor to contact the Authority or the architect in an effort to withdraw his bid. The telegram gave no indication that a mistake had been made in the bid. Although Mr. McCandless, the architect, upon receiving the telegram, attempted to contact Modany by telephone, he was unsuccessful, as no one answered the phone at the Modany office prior to the opening of the bids. When the bids were opened, the Authority had no knowledge at that time that the appellant, Modany, had made a mistake in his bid.

Modany had knowledge of the requirement for the withdrawal of proposals and was bound to follow the requirements in order to accomplish a withdrawal of the proposal. He did nothing except to send the unverified telegram which did not mention a mistake in the bid. Instructions to Bidders are a material part of a contract. The Instructions to Bidders were part of the Contract Documents in this case. In the Proposal of Modany Brothers: "In conformity with the plans and specifications as prepared by B. J. McCandless, 239 Fourth Street, Ellwood City, Pennsylvania, Registered Architect, and having thereon the signature of approval of the Authority, and on file at the office of the State Public School Building Authority; *and after an examination of the site of the work, and the Contract Documents including Instructions to Bidders, this Form of Proposal, Agreement, Bond and Conditions of Contract, the undersigned submits this pro-*

*posal and encloses herewith as a proposal guaranty,* a certified check, bank cashier's check, trust company treasurer's check or bid bond on the form furnished by the Authority in an amount of not less than five percent (5%) of the total of the hereinafter stated bid made payable to or indemnifying the 'State Public School Building Authority', . . ." (Emphasis added). Cf. *Whitemarsh Township Auth. v. Finelli Brothers, Inc.,* 408 Pa. 373, 184 A. 2d 512 (1962) ; *Colella v. Allegheny County,* 391 Pa. 103, 137 A. 2d 265 (1958).

The orderly procedure of making an offer, particularly in regard to public contracts, requires care that the bidders be protected as well as the public interest. This care extends to the procedure in withdrawal of bids to prevent mischief. Reasonable regulations that protect these interests and are consonant with contract law will be upheld. An unverified telegram, and nothing more, as a means of withdrawing a bid is not conducive to the protection of bidders competing for public business. Reasonable and fair provisions surrounding competition for contracts for the performance of public works is necessary and, therefore, they must be established and maintained.

The record indicates that Modany failed to withdraw his proposal in the manner provided for in the Instructions to Bidders. There seems to have been no attempt (except the sending of the unverified telegram without a reason stated therein) to comply in any manner with the withdrawal provision. The indifference, shown by the record, reveals an attitude of complete unconcern. It would be difficult to conceive a more negligent disregard for the requirement of withdrawal of bid.

As the chancellor said in his adjudication : "Plaintiff knew, or certainly should have known, the contents of paragraph 13 [the withdrawal provision] of the Instructions to Bidders. In his proposal he acknowledges

that he had examined them. Then, too, Albert Modany's testimony that 'We did not pay particular attention to that clause', when asked if he knew or had personal knowledge of paragraph 13, leads the Chancellor to believe that plaintiff certainly knew how to properly withdraw his bid but negligently ignored the instructions. If he had made the mistake that he alleges he made he was certainly anything but diligent in following strictly the method established to withdraw his bid. Except for an attempted telephone call to McCandless, plaintiff did nothing toward withdrawing the bid until some three hours after he discovered his alleged mistake, and then he merely dispatched a telegram. Neither then nor at any time prior to the opening of the bids did he attempt to dispatch a written withdrawal by messenger, nor did the plaintiff or any member of his family attempt to reach Harrisburg by rail, auto, or air to be present at the bid opening. Neither did plaintiff attempt to contact, in Harrisburg, McCandless, his agent, who could have properly withdrawn the bid. And to climax his negligent conduct: on the morning of the bid opening when the Authority (which had no duty to do so) attempted to reach the plaintiff's office by telephone apparently no one was present to receive the call. And later, when Albert Modany did talk with counsel for the Authority, he further weakened whatever force his attempted withdrawal had by his equivocal statement that he 'would recheck [his] figures and advise [the Authority] as to whether or not [he] would take the bid, and [he] would let [the Authority] know at a later date if [he] could not take the bid.' "

A public business should not be permitted to be conducted in this fashion.

The chancellor aptly said: "For the general welfare of the public this type of loose conduct in the contractual relations arising from public contracts should not

be condoned. To so condone it would not only be placing a premium on negligence, but would be opening the door for fraudulent conduct between bidders or between a bidder and the public body inviting the bid. For these reasons strict compliance with the Instructions to Bidders must be insisted upon."

We agree. Modany fell far short of effectively withdrawing his bid.

Modany also sought relief in this equity action for rescission of the contract. The court refused to grant the relief prayed for. We agree.

Albert Modany, who prepared the bid, testified that due to his physical fatigue, he made some clerical errors in the preparation of the bid. In *Colella,* supra, the plaintiff, a contractor, filed a complaint in equity against Allegheny County seeking a cancellation and return of its bid bond. Mr. Justice (now Mr. Chief Justice) BELL said: "If a person, from a firm or corporation submits a sealed bid on public works, the principle contended for by the contractor, namely, that after all the bids are opened he can withdraw his bid under the plea of a clerical mistake, would seriously undermine and make the requirement or system of sealed bids a mockery; it could likewise open wide the door to fraud and collusion between contractors and/or between contractors and the Public Authority. What is the use or purpose of a sealed bid if the bidder does not have to be bound by what he submits under seal? What is the use or purpose of requiring a surety bond as further protection for the public, i.e., the municipality, if a bidder can withdraw his bid under plea of clerical mistake, whenever he sees that his bid is so low that he must have made an error of judgment?"

The similarity between the *Colella* case and the within action is such that the ruling in the *Colella* case controls this case and supports the denial of rescission. The chancellor in comparing the cases, said:

"In the Colella case, as here, there was a great difference in the amount of the low bid and the second lowest. There, as here, the mistake was unilateral and the result of negligence on the part of the bidder; and there, as here, the public body had no knowledge of the mistake when the bids were opened." See also *Hedden v. Northampton Area Joint School Authority*, 396 Pa. 328, 152 A. 2d 463 (1959).

Decree affirmed. Costs on appellants.

Mr. Chief Justice BELL and Mr. Justice MUSMANNO dissent.