450 P.2d 604

**BOISE JUNIOR COLLEGE DISTRICT,**
Plaintiff-Appellant,

v.

**MATTEFS CONSTRUCTION COMPANY,**
Inc., a corporation, and United States Fidelity and Guaranty Company, a corporation, Defendants-Respondents.

No. 10200.

Supreme Court of Idaho.

Feb. 7, 1969.

Moffatt, Thomas, Barrett & Blanton, Boise, for appellant.

Eberle & Berlin, Boise, for appellee.

SPEAR, Justice.

The issue presented is whether, under the circumstances of this case, a contractor is entitled to the equitable relief of rescission when it has submitted a bid which contains a material clerical mistake. We conclude that such relief is available.

Mattefs Construction Company (hereinafter termed respondent) was one of ten bidders on a construction contract to be let by Boise Junior College District (hereinafter referred to as appellant). Along with its bid respondent submitted the customary bid bond containing a promise to pay the difference between its bid and the next higher bid actually accepted if respondent refused to enter into a contract with appellant. Contract specifications also provided that the bid could not be withdrawn for 45 days after it was opened.

The architect's estimate of costs on the building project was $150,000, but when the bids were opened seven of them ran in excess of $155,000 while three of them were less than $150,000. Fulton Construction Company bid $134,896. The respondent bid $141,048. The third bid by Cain and Hardy, Inc., was $148,915. When Fulton refused to sign a contract it was tendered to respondent who likewise refused to sign it. Ultimately the contract was awarded to Cain and Hardy, Inc., the third lowest bidder and appellant proceeded to attempt collection on respondent's bid bond.

One who errs in preparing a bid for a public works contract is entitled to the equitable relief of rescission if he can establish the following conditions: (1) the mistake is material; (2) enforcement of a contract pursuant to the terms of the erroneous bid would be unconscionable; (3) the mistake did not result from violation of a positive legal duty or from culpable negligence; (4) the party to whom the bid is submitted will not be prejudiced except by the loss of his bargain; and (5) prompt notice of the error is given. These principles are established by substantial authority, i. e., Annot., 52 A.L.R.2d 792, § III; City of Baltimore v. De Luca-Davis Construction Co., 210 Md. 518, 124 A.2d 557 (1956); M. F. Kemper Const. Co. v. City of Los Angeles, 37 Cal.2d 696, 235 P.2d 7 (1951); State Highway Commission v. State Construction Company, 203 Or. 414, 280 P.2d 370, 380, 52 A.L.R.2d 779 (1955); President & Coun. of Mount St. Mary's. Col. v. Aetna Cas. & Sur. Co., 233 F.Supp. 787, 794 (D.Md.1964); Conduit & Foundation Corporation v. Atlantic City, 2 N.J. Super. 433, 64 A.2d 382 (1949). That appellant recognizes these principles is evident, because it has raised questions as to the existence of each one of these elements by its assignments of error. Therefore, we·

shall consider each of these conditions necessary for equitable relief, in the context of the objections raised.

## I

Appellant contends that the trial court erred in determining that omission of the glass bid was a material mistake. The trial court found:

"This was the second largest sub bid item in the whole contract, only the mechanical sub bid being larger. It amounted to about 14% of the contract and was thus a material item."

Thus, the issue is whether, as a matter of law, a 14% error in bid is a material error. We have no difficulty in reaching the conclusion that omission of an item representing 14% of the total bid submitted is substantial and material. Appellant cites a number of cases wherein courts have directly or indirectly determined that material error was not involved, in spite of mistakes which ranged up to 50%, i. e., Modany Bros. v. State Public School Building Authority, 417 Pa. 39, 208 A.2d 276 (1965); Tony Amodeo Company v. Town of Woodward, 192 Iowa 535, 185 N.W. 94 (1921); A. J. Colella, Inc. v. County of Allegheny, 391 Pa. 103, 137 A.2d 265 (1958); Gregory Ferend Company v. State, 251 App.Div. 13, 295 N.Y.S. 715 (1937). However, we are persuaded we should adopt a rule which is not so harsh and turn instead to authority such as Elsinore Union Elementary School Dist. v. Kastorff, 54 Cal.2d 380, 6 Cal.Rptr. 1, 353 P.2d 713 (1960), in which the court stated:

"Plaintiff suggests that in any event the amount of the plumbing bid omitted from the total was immaterial. The bid as submitted was in the sum of $89,994, and whether the sum for the omitted plumbing was $6,500 or $9,285 (the two sub bids), the omission of such a sum is plainly material to the total. In Lemoge (Lemoge Electric v. County of San Mateo (1956), supra, 46 Cal.2d 659, 661–662, 297 P.2d 638) the error which it was de- clared would have entitled plaintiff to rescind was the listing of the cost of certain materials as $104.52, rather than $10,452, in a total bid of $172,421. Thus the percentage of error here was larger than in Lemoge, and was plainly material."

## II

An error in the computation of a bid may be material, representing a large percentage of the total bid submitted, and yet requiring compliance with the bid may not be unconscionable. Thus, omission of a $25,000 item in a $100,000 bid would be material, but if the $100,000 bid included $50,000 in profit, no hardship would be created by requiring the contractor to comply with the terms of his bid.

This does not represent the case at bar. Here the record reveals that if respondent were forced to comply with the terms of its bid it would lose at least $10,000. Respondent's costs, including the omitted item, would be roughly $151,000 while the total amount of its bid was only $141,000. Enforcement of the bid is deemed unconscionable as working a substantial hardship on the bidder where it appears he would incur a substantial pecuniary loss. Donaldson v. Abraham, 68 Wash. 208, 122 P. 1003 (1912). This is particularly so where, as here, no injury is caused by withdrawal of the bid. (See sec. IV, infra.)

## III

One who seeks equitable relief from error must establish that such error does not result from violation of a positive legal duty or from culpable negligence.

" * * * [This] generally means carelessness or lack of good faith in calculation which violates a positive duty in making up a bid, so as to amount to gross negligence, or wilful negligence, when it takes on a sinister meaning and will furnish cause, if established, for holding a mistake of the offending bidder to be one not remediable in equity. *It is thus distinguished from a clerical*

*or inadvertent error in handling items of a bid either through setting them down or transcription."* (emphasis added) Annot., 52 A.L.R.2d 792, 794.

In several of its assignments appellant contends that the trial court erred in not finding that respondent was negligent to the point of being grossly negligent. Respondent's superintendent, who actually made the mistake, testified as follows:

"Q * * * what did you do * * * relating to glass and glazing?

"A I was putting this bid together. When I come to the glass section, I had a question on this bid. That is when I called Intermountain Glass to verify that their bid covered everything in this section.

"Q What did you do after you verified it? What did you do with that bid?

"A Well, I called them and got the information I needed so that I was satisfied in my mind that the bid really covered everything, but I had been working on the phone and the minute I hung up from talking to the man at Intermountain I had to answer another call before I could get that figure down and take another bid.

"Q This was all during the lunch hour?

"A Yes. I continued with my work sheet. This is when I made the mark that included another figure and just left the glass out.

"Q Can you show * * * what you did with reference to the bracket * * *?

* * * * * *

"A Well, * * * I had put just a little bracket to show what was included in the next two items, so that anyone coming in who was unfamiliar with it would immediately know it was included here, which it definitely shows that it is. Why I did that, I'll never know, with that other bracket with another figure

that would indicate that it was included."

Appellant emphasizes the fact that Mr. Howie was left alone during the lunch hour. However, this factor, to the extent it would indicate a degree of pre-existing negligence, was adequately explained by Howie further on in his direct testimony:

"Well, for some reason there was an unusual amount of calls that I was getting this noon. Generally that is not true. Usually they slack off at that time. I happened to be in the office alone and after taking a number of phone calls it was getting along toward the bid opening and this had to be put together."

On the basis of this and other evidence in the record, the trial court found:

"* * * Defendant Mattefs' bid was compiled in its office and was completed by Mr. Howie, defendant's superintendent, on rough work sheets at about 1:00 P.M. on October 5, 1965. Last minute bids from subcontractors came in until said time. In compiling the work sheet, Mr. Howie failed to insert the amount of any subcontractor's bid for 'Window walls—glass and glazing.' Mattefs' company had received four bids for this work, the lowest of which was $19,741.00 * * *

"Immediately thereafter the figures on the work sheet were totaled by the defendant's office manager, but she did not check to see whether all bid items were on the work sheet. Mr. Mattefs, after 1:00 P.M. of the same day, looked over the work sheets and also failed to catch this omission. Thereafter the formal bid, * * * was prepared and was taken to plaintiff's office by defendant's president. This was after 1:30 P.M. the day of the bid opening. At approximately 1:55 P.M. defendant's office manager discovered the omission on the work sheet. She attempted to call Mr. Mattefs at plaintiff's office, but before she could get connected to the proper office * * * it was after

2:00 P.M. and the bid opening had commenced."

On the basis of these facts the trial court concluded:

"There was no willful or even negligent act by plaintiff's agents which prevented knowledge of the error from reaching Mr. Mattefs prior to the opening. In preparing the bid Mattefs Construction Company proceeded in the usual way and under the same last minute pressures that are experienced by all general contractors bidding on bids of this kind. Under the evidence I conclude that it was using ordinary care in its methods of bid preparation; that is, the same care that other contractors in the area use in making bids of the kind here involved. There was no evidence of any gross negligence or fraudulent or willful intent to omit this item for the purpose of obtaining any advantage in the bidding."

 It is appellant's contention that the trial court erred in making these findings. It has long been the rule of this court that:

"Where the findings of the trial court are supported by substantial and competent, though conflicting, evidence, such findings will not be disturbed on appeal." Riley v. Larson, 91 Idaho 831, 432 P.2d 775 (1967); Meridian Bowling Lanes, Inc. v. Brown, 90 Idaho 403, 412 P.2d 586 (1966). Additionally, the trial judge is the arbiter of conflicting evidence; his determination of the weight, credibility, inference and implications thereof is not to be supplanted by this court's impressions or conclusions from the written record. Meridian Bowling Lanes, Inc. v. Brown, supra. Also findings of fact shall not be set aside unless clearly erroneous. I.R.C.P. 52(a).

 Thus, the finding of the trial court that the mistake of respondent was not due to the required type of negligence must be affirmed. As was held in the *Kemper* case:

"The type of error here involved is one which will sometimes occur in the con-

duct of reasonable and cautious businessmen, and, under all the circumstances, we cannot say as a matter of law that it constituted a neglect of legal duty such as would bar the right to equitable relief." 235 P.2d at p. 11.

IV

 It is well settled by the authorities that a bid may not be withdrawn if such withdrawal would work a substantial hardship on the offeree. Many situations can be hypothesized where such a hardship would result. However, none appears here, nor has appellant attempted to prove any hardship. Appellant expected to pay $150,000 for the work it solicited. Its actual cost will be $149,000. It complains because it cannot have the work done for $141,000. Thus, appellant's injury consists of a failure to save $9,000 on its construction rather than saving $1,000.

"* * * [T]he city will not be heard to complain that it cannot be placed in statu quo because it will not have the benefit of an inequitable bargain. [citations]" * * * Kemper Const. Co., supra, at page 11. See also Kutsche v. Ford, 222 Mich. 442, 192 N.W. 714, 717 (Mich.1923).

 The most appellant can argue is that its damage is presumed by the requirement of a bid bond and that release of a bid bond and that release of a bidder whenever he makes a mistake will impair the purposes for which a bid bond is required. First of all, as previously pointed out, not all mistakes entitle a bidder to equitable rescission, and second, withdrawal of a bid under proper circumstances will not destroy the irrevocability of bids.

"There is a difference between mere mechanical or clerical errors made in tabulating or transcribing figures and errors of judgment, as, for example, underestimating the cost of labor or materials. The distinction between the two types of error is recognized in the cases allowing rescission and in the procedures provided by the state and federal gov-

ernments for relieving contractors from mistakes in bids on public work. [citations] Generally, relief is refused for error in judgment and allowed only for clerical or mathematical mistakes. [citations] Where a person is denied relief because of an error in judgment, the agreement which is enforced is the one he intended to make, whereas if he is denied relief from a clerical error, he is forced to perform an agreement he had no intention of making. The statement in the bid form in the present case can be given effect by interpreting it as relating to errors of judgment as distinguished from clerical mistakes." M. F. Kemper Const. Co., supra, at page 11.

The proper purpose of a provision against withdrawal of a bid was fully explained by the Maryland Court of Appeals, quoting from Geremia v. Boyarsky, 107 Conn. 387, 140 A. 749 (1928):

> " 'It is objected that the rule should be different where, as here, there is a proviso forbidding the withdrawal of bids. To be sure, this puts a bidder on notice that there is a certain finality about bidding for a government contract. But this by no means should enable a governmental agency to take an unconscionable advantage of its special status as a government body. * * * The proper effect of the requirement that bids remain unrevoked is to assure the State that a bidder will be relieved of his obligation only when it is legally justifiable. That means that the State is in the same position as any acceptor when there is a question of rectifying an error. * * * Of course, it is obvious, as the State contends, that the system of public bidding, developed by experience and usual in public contracts, should not be broken down by lightly permitting bidders to withdraw because of change of mind. Such a course would be unfair to other straight-forward bidders, as well as disruptive of public business. But it can hardly be a substantial impairment of such system to grant the relief—which would clearly be given as between private citizens—in a case where a bona fide mistake is proven and was known to the State before acceptance or any loss to it.' " City of Baltimore v. De Luca-Davis Construction Co., 124 A.2d at p. 565.

## V

The final element of the right to equitable relief raised by appellant is actually an adjunct of the previous question of whether the offeree will be damaged by withdrawal of the bid. The requirement of prompt notice is separately stated here because appellant earnestly argues that it was not given such prompt notice. This contention is not supported by the evidence.

The bids were opened on October 5, 1965. The lowest bidder immediately indicated that it might not accept the contract. At that time respondent's president, who was present at the bidding, did not have actual knowledge that respondent's bid was incorrect. When respondent's president returned to the office he was informed of the mistake. That evening appellant's secretary was informed, on an informal basis, that respondent had made an error in preparation of its bid, according to the testimony of respondent's president. Appellant's secretary admitted on cross-examination that such might have been the case. In any event, the next morning the nature of the mistake was explained in detail to appellant's secretary. By letter denominated a "waiver," under date of October 7, 1965, respondent informed appellant's attorneys that it objected to signing a contract at the bid price. Appellant considered the letter on October 8, and decided to take no action with respect to it. Apparently appellant determined to adhere to a resolution adopted October 6, by which the contract was to be tendered to Fulton, the lowest bidder, then to respondent and finally to Cain and Hardy. On October 11, the contract was formally tendered to respondent. On October 15 respondent rejected the tendered contract and made a counteroffer to sign a contract for $1.00 less than Cain and

Hardy's bid. On October 19 the appellant rejected the counteroffer and declared respondent's bid bond forfeited. Thus, appellant had actual notice of respondent's error and the untenable position respondent was in long before appellant attempted to accept respondent's offer by tendering the latter a contract. Relief from mistaken bids is consistently allowed where the acceptor has actual notice of the error prior to its attempted acceptance and the other elements necessary for equitable relief are present. M. F. Kemper Const. Co., 235 P.2d at page 10. We see no reason to deviate from this rule where, as here, the party opposing the grant of equitable relief can show no damage other than loss of benefit of an inequitable bargain. We conclude that appellant's position is no better here than it was when similar arguments were presented to the U.S. Supreme Court nearly 70 years ago. In quoting from the circuit court opinion, the court held:

"'* * * If the defendants [appellants] are correct in their contention there is absolutely no redress for a bidder for public work, no matter how aggravated or palpable his blunder. The moment his proposal is opened by the executive board he is held as in a grasp of steel. There is no remedy, no escape. If, through an error of his clerk, he has agreed to do work worth $1,000,000 for $10, he must be held to the strict letter of his contract, while equity stands by with folded hands and sees him driven into bankruptcy. The defendants' [appellants'] position admits of no compromise, no exception, no middle ground.'" Moffett, Hodgkins & Clarke Co. v. City of Rochester, 178 U.S. 373, 386, 20 S.Ct. 957, 961, 44 L.Ed. 1108 (1900).

This reasoning is equally applicable to the cause at bar.

Judgment affirmed. Costs to respondent.

McQUADE and McFADDEN, JJ., and HAGAN and FELTON, District Judges, concur.