696 P.2d 711

MARANA UNIFIED SCHOOL DISTRICT NO. 6, an Arizona Unified School District, Plaintiff/Appellee,

v.

The AETNA CASUALTY AND SURETY COMPANY, a Connecticut corporation, and L.G. Lefler, Inc., an Arizona Corporation, dba Defco Construction Company, Defendants/Appellants.

No. 2 CA–CIV 5139.

Court of Appeals of Arizona, Division 2.

Dec. 3, 1984.

Review Denied Feb. 5, 1985.

**160**

DeConcini McDonald Brammer Yetwin & Lacy, P.C. by Spencer A. Smith and William B. Hanson, Tucson, for plaintiff/appellee.

Lohse & Bloom by Ashby I. Lohse and Cliffton E. Bloom, Tucson, for defendants/appellants.

## OPINION

BIRDSALL, Chief Judge.

This appeal arises from a complaint filed by the appellee, Marana Unified School District, seeking judgment on a bid bond given by appellants, L.G. Lefler, Inc., doing business as Defco Construction Company, principal, and the Aetna Casualty and Surety Company, surety. The bond was provided pursuant to A.R.S. § 34–201(A)(3) because Defco submitted a bid proposal to construct a junior high school building for the appellee. The statute provides:

> 3. That every proposal shall be accompanied by a certified check, cashier's check or a surety bond for five per cent of the amount of the bid included in the proposal as a guarantee that the contractor will enter into a contract to perform the proposal in accordance with the plans and specifications, or as liquidated damages in event of failure or refusal of the contractor to enter into the contract. The certified check, cashier's check or surety bond shall be returned to the contractors whose proposals are not accepted, and to the successful contractor upon the execution of a satisfactory bond and contract as provided in this article.

Although Defco was the low bidder, it refused to enter into a contract with the appellee because it had made a mathematical mistake in its proposal.

The trial court entered summary judgment in favor of the Marana District in the amount of $270,662.50, that being five per cent of Defco's base bid plus alternates together with costs and attorney fees.[1] The appellants' cross-motion for summary judgment was denied.

The facts considered in the light most favorable to the appellants may be summarized as follows. The appellee gave notice

---

1. Apparently the trial court fixed the judgment at five per cent of the base bid plus all alternates. Since the offer made to Defco at the meeting on February 4 was for the base bid only and since that was also the language used in Defco's proposal, we believe judgment on the bid bond should not have exceeded five per cent of $4,890,000 or $244,500.

of its intent to receive sealed bids for the construction of the school pursuant to A.R.S. § 34–201. The bids were required to be submitted by 4 p.m., February 2, 1982, at which time they were opened. The appellant's bid was for $4,890,000 together with alternates, all of which totalled $5,936,500. The bid bond attached to the proposal was "in the sum of five per cent of contract bid." No·actual figures were set forth on the bond but the proposal referred to the required bid bond amount as five per cent of the "base bid" which would have been $244,500. Nine other contractors submitted bids. Defco's was the lowest base bid. The next lowest base bid was $5,447,000. The architect's estimated cost for the construction without alternates was $4,900,000. Defco's bid was within two-tenths of one per cent of that estimate.

After all bids were opened, the architect and school district officials reviewed them and a written recommendation was made that day to accept Defco's base bid together with two alternates totalling $5,253,080.

At about the same time, Defco personnel were rechecking their figures since it appeared that a mistake may have been made. The employee who had tabulated Defco's bid sheet then discovered that she had used $42,000 as the bid for the structural steel when the correct figure was $412,000, a mistake of $370,000.

According to the employee's affidavit attached to the appellants' cross-motion for summary judgment, she was still receiving telephone bids from subcontractors and suppliers and working on Defco's bid up until 3:30 on February 2; she found a mistake in her first tabulation of some 170 items on the bid sheet and did a second tabulation, then added the figures six times. Since this brought her so close to the time the bid had to be submitted, there was no time to have another employee check her figures.

Defco advised appellee by telephone within one and one-half hours of the bid opening of the mistake which came to $398,752 with the addition of other items based on percentages of the $370,000 error.

A letter containing the same information was delivered to the school within three hours after the bid was opened at 4 p.m. In the letter Defco asked to meet with the school officials to show them the calculator tapes and bid sheet which revealed how the error had occurred.

The school board held a special meeting at 7:30 that evening, February 2, receiving the report and recommendation of the architect and the letter from Defco. Apparently because of the latter, they deferred consideration of the bids and the school superintendent was instructed to consult with legal counsel.

A second special meeting of the board was held on February 4 with Mr. Lefler from Defco present. Pursuant to a motion passed by the board, the president asked Lefler if Defco was prepared to perform the contract if awarded under Defco's original low base bid. Lefler answered no, whereupon the board passed a motion that "the board reject all bids received on February 2 and instruct the architect to prepare to re-bid the construction contract...."

There is no conflict in any of the foregoing facts. Other facts will be discussed as necessary in relation to the issues.

The important issue presented by this appeal is whether a low bidder for a public contract may refuse to enter into a contract because of a mistake in the bid without forfeiting the bid bond. Although this question has never been decided in Arizona, it has been the subject of numerous opinions in our sister states and federal courts. For a recent compilation and discussion of these cases see the annotation in 2 ALR4th 991, "Right of bidder for state or municipal contract to rescind bid on ground that bid was based upon his own mistake or that of his employee."

Before discussing this issue, which we believe to be dispositive, we reject certain other contentions made by the appellants.

■ The appellants contend first that the school board never offered a contract to Defco and that it rejected all bids includ-

ing Defco's. We disagree. The only evidence is that the school board at its meeting on February 4 asked the Defco officer whether Defco would perform if the contract were awarded for the low base bid. The answer was an unequivocal no. Nothing more should be required. There is no room for any doubt. Defco refused to enter into the contract. It is also abundantly clear that the bids were not rejected until after this refusal. The appellants' contention that this action released the bid bond is without merit. Likewise we reject the argument that the action of the board rejecting the bids constituted a mutual rescission of the Defco bid bond contract. No weighing of the evidence is required. It is impossible to make any inference other than that the appellee offered the contract and the appellant refused.

Thus we must consider the controlling question—whether Defco's refusal to enter into a contract because of the mistake in the bid must result in the forfeiture of the bid bond.

It is the appellee's position that the statute permits no escape from forfeiture. There is authority to support such a result. These decisions are cited by the appellants: *Board of Edn. v. Sever-Williams Co.*, 22 Ohio St.2d 107, 258 N.E.2d 605, cert. denied, 400 U.S. 916, 91 S.Ct. 175, 27 L.Ed.2d 155 (1970), and *A.J. Colella, Inc. v. County of Allegheny*, 391 Pa. 103, 137 A.2d 265 (1958). They stand for the very position argued by the appellee and followed by the trial court, that given a statute like Arizona's, forfeiture of the bid bond is mandated even though there is legal justification for the withdrawal of the bid. The reasoning in these decisions is generally the same, that this is the purpose of the statute and to permit exceptions would materially weaken the purpose of the bidding procedure for public contracts and make the bid bond requirement meaningless. In *Colella* the court opines that plea of a clerical mistake would make the system of sealed bids a mockery. *Sever-Williams* speaks of possible abuse of the bidding procedure, i.e., favoritism or fraud. *See also Crenshaw County Hospital Board v. St. Paul*

*Fire & Marine Insurance Co.*, 411 F.2d 213 (5th Cir.1969); *Anco Construction Co., Ltd. v. City of Wichita*, 233 Kan. 132, 660 P.2d 560 (1983); *Triple A Contractors, Inc. v. Rural Water District No. 4*, 226 Kan. 626, 603 P.2d 184 (1979); and *City of Newport News v. Doyle & Russell, Inc.*, 211 Va. 603, 179 S.E.2d 493 (1971) where no state statutes were involved.

■ We do not agree with the reasoning or result in those cases. Nor do we believe that the Arizona legislature intended that there be no relief from forfeiture of the bid security for equitable reasons. We agree with the appellants that unless the legislature clearly indicates an intention to do so, its enactments shall not be construed so as to change established common law. *Terry v. Lincscott Hotel Corp.*, 126 Ariz. 548, 617 P.2d 56 (1980); *Kilmer v. Hicks*, 22 Ariz. App. 552, 529 P.2d 706 (1974). The doctrine of rescission for unilateral clerical mistake was set forth by the United States Supreme Court as early as 1900. *See Moffett, Hodgkins, & Clarke Co. v. City of Rochester*, 178 U.S. 373, 20 S.Ct. 957, 44 L.Ed. 1108 (1900).

■ We believe the trial court erred in granting summary judgment in favor of the appellee. We follow those decisions which hold that when relief from the forfeiture is legally justifiable, statutes like Arizona's do not mandate the forfeiture. The cases upon which we rely all arise under a statute or bid solicitation which, on its face, prohibits a withdrawal of bids. The notice inviting the sealed bids in the instant case provided, in part, that the appellee reserved the right to hold any and all bids for a period of 45 days after the opening and that no bidder may withdraw its bid during this 45-day period. In these cases the bidder notified the public authority of the mistake prior to acceptance of the bid. Clearly this notice was promptly given by Defco before the appellee had accepted the bid.

A starting point is the decision in *Moffett, Hodgkins, & Clarke Co. v. City of Rochester*, supra. The mistake in *Moffett* resulted from mathematical errors commit-

ted by an extremely nearsighted engineer working in great haste with a voluminous number of specifications. Affirming a decree in favor of the contractor, the Supreme Court said that the contractor was not endeavoring to withdraw or cancel a bid or bond in contravention of the city charter, since the contractor was proceeding upon the theory that the bid read at the meeting of the board was one which it had never intended to make, and that the minds of the parties had never met. The Court added that if the city was correct in its contention that the charter provision barred any remedy, then there would be no redress for a bidder on a public work, no matter how aggravated or palpable his blunder. A material mistake of fact in a bid justifies a conclusion that there has been no meeting of the minds because the bidder did not intend to make the erroneous bid. *See State Highway Commission v. Canion,* 250 S.W.2d 439 (Tex.Civ.App. 1952).

What appear to be the majority decisions rely upon the equitable remedy of rescission. In these decisions the courts have held or recognized that the bidder who had notified the public authority of the mistake prior to acceptance of the bid was entitled to a decree rescinding the bid, or to similar equitable relief, despite a statute similar to A.R.S. § 34–201(A)(3). *See Peerless Casualty Co. v. Housing Authority of Hazelhurst,* 228 F.2d 376 (5th Cir.1955); *Dick Corp. v. Associated Electric Cooperative, Inc.,* 475 F.Supp. 15 (W.D.Mo.1979); *Osberg Construction Co. v. City of The Dalles,* 300 F.Supp. 442 (D.Or.1969); *Connecticut v. F.H. McGraw & Co.,* 41 F.Supp. 369 (D.Conn.1941); *City of Syracuse v. Sarkisian Brothers, Inc.,* 87 A.D.2d 984, 451 N.Y.S.2d 945 (1982); *Arcon Construction Co. v. State Department of Transportation,* 314 N.W.2d 303 (S.D.1982); *Wil-Fred's Inc. v. Metropolitan Sanitary District,* 57 Ill.App.3d 16, 14 Ill.Dec. 667, 372 N.E.2d 946 (1978); *Gaastra v. Village of Fairwater,* 77 Wis.2d 7, 252 N.W.2d 60 (1977); *Clover Park School District v. Consolidated Dairy Products Co.,* 15 Wash.App. 429, 550 P.2d 47 (1976); *Boise Junior College District v. Mattefs Construction Co.,* 92 Idaho 757, 450 P.2d 604 (1969); *Smith & Lowe Construction Co. v. Herrera,* 79 N.M. 239, 442 P.2d 197 (1968); *State Highway Commission v. State Construction Co.,* 203 Or. 414, 280 P.2d 370 (1955); *Townsend v. McCall,* 262 Ala. 554, 80 So.2d 262 (1955). *See also* 52 A.L.R.2d 779.

These cases generally set forth certain criteria to be satisfied before a forfeiture can be avoided. The criteria are summarized in yet another especially comprehensive decision, *City of Baltimore v. De Luca-Davis Construction Co.,* 210 Md. 518, 524, 124 A.2d 557, 562 (1956).

1, the mistake must be of such grave consequences that to enforce the contract as made or offered would be unconscionable; 2, the mistake must relate to a material feature of the contract; 3, the mistake must not have come about because of the violation of a positive legal duty or from culpable negligence; 4, the other party must be put in status quo to the extent that he suffers no serious prejudice except the loss of his bargain.

Most of the decisions cited above contain these same conditions precedent to rescission for a unilateral mistake.

Other cases have added as an additional reason for permitting rescission that the public body knew or had reason to know that a mistake had been made. *Townsend v. McCall,* supra. We do not understand that to be a requirement for rescission. It is indeed difficult to envisage a fact situation where the public body would know that a sealed bid contained a mistake prior to its opening unless the bidder discovered and gave notice of the mistake. After that, unless the bid is accepted and a contract made, it seems immaterial whether upon opening the bid the public body knew or should have known. At least in the instant case, where the appellant notified the appellee within three hours and before any attempted acceptance of the bid, it does not appear to be material.

Other courts admonish that a bidder should not be able to withdraw a bid under circumstances profitable to the bidder or which would permit any collusion or connivance among bidders to the detriment of the public. *See State Board of Control v. Clutter Construction Corp.*, 139 So.2d 153 (Fla.1962). Nothing suggests any such problems in the record before us.

■ Turning to the four conditions required by *DeLuca* and other decisions, we believe they are all satisfied by the undisputed evidence before the trial court. We consider them in order.

First, was the mistake of such consequence as to make enforcement of the contract unconscionable? From our analysis of the reported decisions this refers not to the bid bond, since it contains no mistake, but to the mistake in the bid. · That mistake was in the amount of almost $400,000. This was approximately eight per cent of the base bid of $4,890,000. Although we believe this to be unconscionable on its face, we compare it to the amounts involved in other reported cases. Thus we find: *Peerless Casualty Co. v. Housing Authority*, supra, mistake $34,022, bid $463,733; *Boise Junior College District v. Mattefs Construction Co.*, supra, mistake 14 per cent of $141,000 bid; *Wil-Fred's Inc. v. Metropolitan Sanitary District*, supra, mistake $150,000, bid $882,600; *City of Baltimore v. DeLuca-Davis Construction Co.*, supra, mistake $589,880, bid $1,769,064; *State Board of Control v. Clutter Construction Corp.*, supra, mistake $100,000, bid $1,367,000; *M.F. Kemper Construction Co. v. City of Los Angeles*, 37 Cal.2d 696, 235 P.2d 7 (1951), mistake $301,769, bid $780,305; *State Highway Commission v. State Construction Co.*, supra, mistake $35,000, bid $172,699; *A.J. Collela, Inc. v. County of Allegheny*, supra, mistake $50,000, bid $144,900; *Board of Edn. v. Sever-Williams Co.*, supra, mistake $145,000, bid $1,242,000; *City of Syracuse v. Sarkisian Brothers, Inc.*, supra, mistake $181,700, bid $3,547,000.

Although some of these are proportionately greater than the mistake of Defco, some are smaller in proportion to the bid, and we believe the amount of the mistake was of such grave consequence that it would be unconscionable to enforce it.

The appellee argues, however, that forfeiture of the 5 per cent bid bond is not unconscionable because it is the very bid contract which was bargained for and made by the parties. This argument does not go to the issue of unconscionability but rather to the principal issue, i.e., must the bid bond be forfeited despite the presence of legal justification for the refusal to enter into the contract. In all of the cases cited above, the discussion of unconscionability concerns the amount of the mistake in the bid and not the bid security. In each case it appears that the bid security sought to be forfeited was required by statute or by the bidding documents. Thus if unconscionability was to be determined by reference to the fact that the parties knew the amount of the penalty to be exacted, we believe that would have been decisive in many of those cases. We find no such holding. Assuming, arguendo, that we should look to the forfeiture of the bid bond rather than the amount of the mistake, one quarter of a million dollars is still, in the vernacular, a lot of money, and we believe it would be unconscionable to require even this forfeiture in the instant case.

The second condition, that the mistake must relate to a material feature of the contract, cannot be disputed. The amount to be paid for the construction is clearly a material feature of the contract.

The third condition concerns the question of whether the mistake constituted culpable negligence or the violation of a positive legal duty. If either, then this third requirement is unsatisfied. Since there is no contention that the appellant violated any legal duty, we must determine only whether there was "culpable negligence." Generally a mechanical, clerical, or mathematical error satisfies this condition whereas an error in judgment does not. *Kemper*, supra. In fact this distinction highlights the inequitable result of the trial court's deci-

sion in this case. The mistake was not one of judgment, as for example, underestimating the cost of labor or materials. It was not intended. We believe this distinction also serves to show the real purpose for the statute requiring forfeiture of the security. The bidder who makes an error in judgment should be penalized if he then refuses to execute the contract. On the other hand, the bidder who submits a bid which is different than that which he intended to make is entitled to relief. *Kemper*, supra. The type of mistake satisfying this condition has been variously referred to as resulting from some reasonable excuse, *Peerless Casualty Co.*, supra; based upon an erroneous omission and not involving gross negligence, *Boise Junior College District*, supra; and honest and not gross negligence, *DeLuca-Davis*, supra.

■ At least one jurisdiction, Illinois, requires that the party seeking rescission prove that the mistake occurred notwithstanding the exercise of reasonable care. *Wil-Fred's Inc. v. Metropolitan Sanitation District*, supra. Thus in the present case the appellee argues there was lack of reasonable care. Deposition testimony revealed that the normal procedure would have been to have a second person total the figures on the bid spread sheet and run a tape on those prices as a check on the work of the original clerk. This procedure was not followed. Likewise the original clerk notified one of the estimators working on the project just prior to the bid deadline that her work had not been double-checked. *See also John J. Calnan Co. v. Talsma Builders, Inc.*, 67 Ill.2d 213, 10 Ill.Dec. 242, 367 N.E.2d 695 (1977) where the court considered the failure of a subcontractor to utilize its own bid procedures. Despite finding this to be less than the exercise of reasonable care, the case is distinguishable since the mistake was not discovered until performance under the contract had begun and it was impossible to return the general contractor to status quo.

We reject the reasonable care standard since it appears to be nothing more than a test for negligence. We agree with the rationale appearing in the comment to § 157 of the Restatement, Second, Contracts. Section 157 concerns the effect of the fault of the party seeking relief from a mistake and provides:

A mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation under the rules stated in this Chapter, unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.

The comment to the section states:

The mere fact that a mistaken party could have avoided the mistake by the exercise of reasonable care does not preclude either avoidance or reformation. Indeed, since a party can often avoid a mistake by the exercise of such care, the availability of relief would be severely circumscribed if he were to be barred by his negligence. Nevertheless, in extreme cases the mistaken party's fault is a proper ground for denying him relief for a mistake that he otherwise could have avoided. Although the critical degree of fault is sometimes described as "gross" negligence, that term is not well defined and is avoided in this Section as it is in the Restatement, Second, of Torts. Instead, the rule is stated in terms of good faith and fair dealing.

Defco's burden of showing good faith and fair dealing is satisfied and not in dispute. No facts are suggested by affidavit, deposition, or otherwise from which it could be inferred that there was a lack of good faith or fair dealing.

Another method of testing the mistake to determine if it could be "culpable negligence" is comparing it to the other mistakes for which the courts have granted relief. Such a comparison shows several factual situations which are strikingly similar to the instant case. *See*, for example, *Moffett, Hodgkins, & Clarke Co.*, supra. The annotation in 2 A.L.R.4th, supra, contains several summaries of facts which illustrate and fortify this conclusion.

Thus we are left with the question of whether the appellee has been placed in status quo so that it suffers no serious prejudice except loss of bargain.

The minutes of the Marana school board meeting of February 4 show that the board rejected all bids and instructed the architect to prepare to rebid the construction contract. All of the rejected bids including the bid the appellant intended to make exceeded the architect's estimate by over $350,000. Obviously the board decided to try again. These facts were before the court for its consideration on the cross-motions for summary judgment. The appellants contend that they established that the school had been put in status quo. The appellee offered nothing to refute this conclusion. No evidence shows that the appellee contends that it suffered serious prejudice, or, in fact, any prejudice except the loss of a bargain which was never intended by the appellants.

We reverse the judgment and direct the trial court to enter judgment in favor of the appellants.

HATHAWAY, J., and WILLIAM N. SHERRILL, Superior Court Judge, concur.

NOTE: Judge LAWRENCE HOWARD having recused himself in this matter, Judge WILLIAM N. SHERRILL was called to sit in his stead and participate in the determination of this decision.