**J.D. GRAHAM CONSTRUCTION INCORPORATED and Mid–Continent Casualty Company, Appellants,**

v.

**PRYOR PUBLIC SCHOOLS INDEPENDENT SCHOOL DISTRICT NO. 1, MAYES COUNTY, Appellee.**

No. 79296.

Court of Appeals of Oklahoma, Division 1.

March 9, 1993.

Certiorari Denied May 11, 1993.

---

Gerald G. Stamper, Sarah E. Hansel, Nichols, Wolfe, Stamper, Nally & Fallis, Inc., Tulsa, for appellants.

J. Ralph Moore, Julia L. Neftzger, Darrell L. Moore, Pryor, for appellee.

## MEMORANDUM OPINION

ADAMS, Presiding Judge:

J.D. Graham Construction Incorporated (Graham) and Mid–Continent Casualty Company, Graham's bid bond issuer, appeal a trial court judgment in favor of Appellee in this dispute arising under the Public Competitive Bidding Act of 1974 (Act), 61 O.S.1991 101 *et seq.* Because we agree forfeiture of the bid bond was mandatory under the facts presented by this record, we affirm.

## FACTS

The facts in this case are undisputed.[1] Graham responded to an advertised solicitation for prime contracts bids for renovation of six school buildings located in Independent School District No. 1, Mayes County (School). Prior to the scheduled opening of the bids on August 15, 1991, at 2:00 p.m., Graham began soliciting the necessary bids for materials and subcontracts required to complete the project according to School's specifications and plans.

---

1. In the response filed in opposition to Graham's motion for summary judgment, School agreed that there was no substantial controversy as to any material fact, and moved that it be awarded judgment as a matter of law. Rule 13(e), Rules for District Courts, 12 O.S.1991 Ch. 2, App. 1.

According to the uncontroverted evidence, it is standard practice in the construction industry for subcontractors and suppliers to frequently delay providing their final lowest prices and bids to the prime contractor until minutes before the prime contract bid must be submitted. With this in mind, Graham stationed one of its associates near the bid submission site to receive from the office by telephone the final base and alternate bid figures for incorporation into the formal bidding documents to be submitted to School. In a "flurry of activity" just minutes before the bid submission deadline, Graham's president mistakenly relayed to a person in the office an air conditioning subcontractor's bid as $45,000 instead of the actual bid of $145,000. This wrong information was transmitted to the associate at the bid submission site and used in computing Graham's total bid.

When the bids were opened and read publicly, Graham was the low bidder. After learning this, Graham's president and its secretary/treasurer checked the bid figures and discovered the $100,000 error. School's architect was immediately informed of the error by telephone, and the next day Graham's president wrote and delivered a letter to School advising of the error and requesting Graham's bid be withdrawn and its bid bond released. On August 19, 1991, Graham's president appeared before the school board to explain the calculation error and again requested to withdraw its bid. On August 27, 1991, Graham was advised that School had awarded it the renovation contract.

Graham and its surety, Mid–Continent Casualty Company (Mid–Continent), sued, requesting a judicial determination that all obligations arising from Graham's bid and the bid bond were discharged and exonerated by virtue of Graham's unilateral mistake. They also sought an order compelling School to return the bid bond. Graham and Mid–Continent moved for summary judgment, attaching relevant evidentiary materials. School responded, disputed none of the facts stated in Graham's motion, and asked for summary judgment in its favor. The trial court held the Act required forfeiture of Graham's bid bond and entered judgment for School for the difference between Graham's bid and the next highest bidder. Graham and Mid–Continent appeal.

## ANALYSIS

Graham argues forfeiture was not required for two reasons. First, Graham claims it was not the "apparently successful bidder" as that term is used in § 107 of the act, and therefore did not forfeit its bond by failing to execute a contract. Second, Graham argues the trial court retained the equitable power to excuse Graham's unilateral mistake under these circumstances. We address these arguments in the order stated.

Section 107(A) of the Act requires each bidder on a public construction contract to accompany the bid with a certified check, cashier's check, bid bond, or irrevocable letter of credit in the amount of five percent of the bid. Section 107(B) provides for forfeiture of that security as follows:

> The cost of republication of the notice to bidders, all actual expenses incurred by reason of the bidder's default and the difference between the low bid of the defaulting bidder and the amount of the bid of the bidder to whom the contract is subsequently awarded, but not to exceed the amount of the certified check, cashier's check, bid bond or irrevocable letter of credit *shall be forfeited to the awarding public agency in the event the apparently successful bidder fails to execute the contract or fails to provide the required bonds or irrevocable letters of credit and insurance to the awarding public agency.* [Emphasis added]

According to Graham's argument, "apparently successful bidder" means the bidder to whom the "awarding public agency" awards the contract. Because Graham advised School of the error in its bid and asked to withdraw its bid before the School awarded the contract, Graham claims it was not the "apparently successful bidder" and forfeiture is not required by this section.

■ The primary goal of statutory construction is to follow the legislative intent, and in doing so this court must presume the Legislature expressed its intent in a statute and intended what it expressed. *Ledbetter v. Oklahoma Alcoholic Bev. Laws Enforcement Comm'n,* 764 P.2d 172 (Okl.1988); *Land v. Transport Indem. Co.,* 791 P.2d 118 (Okl.App.1990). Where possible, all relevant portions of a statute and related enactments will be considered together to give force and effect to all of them. *Clifton v. Clifton,* 801 P.2d 693 (Okl.1990). Statutes should be read so as to render every word in a sentence operative, rather than in a manner which would make a statutory provision nugatory. *Burris v. State ex rel. Dept. of Public Safety,* 785 P.2d 332 (Okl.App.1989).

Graham correctly argues that the Act does not require an award to the lowest bidder but to the lowest responsible bidder, which in all cases is not necessarily the bidder having the lowest bid. 61 O.S.1991 § 103; *Rollings Const. Inc. v. Tulsa Metro. Water Auth.,* 745 P.2d 1176 (Okl.1987). Graham argues a bid cannot be determined to be both lowest and responsible, and therefore "apparently successful", until the public agency has taken action on the bid.

■ Graham's argument overlooks the legislative treatment of the bidder who is awarded the contract. In § 113 that bidder is referred to as "the successful bidder." Further, Graham's interpretation robs the word "apparently" of any meaning. In the absence of specific definitions, this court must assume the Legislature intended for words to have the same meaning as that attributed to them in ordinary and usual parlance. *Loffland Bros. Equipment v. White,* 689 P.2d 311 (Okl.1984). "Apparently" is defined as "in an apparent manner: seemingly, evidently." Webster's Third New International Dictionary, 103. A bidder who has been awarded the contract is not "apparently" or "seemingly" successful. Such a bidder has in fact succeeded.

■ If we are to give any meaning the to Legislature's choice of language, we must conclude the "apparently successful bidder" referenced in § 107 is the bidder who, unless something unusual happens, will be awarded the contract. The Act requires the contract to be awarded to the lowest bidder unless there are specific reasons why that bid is not "responsible", *see* § 117 of the Act, and we conclude "apparently successful bidder" is synonymous with "lowest bidder." Graham became the "apparently successful bidder" when the bids were opened and its bid was lowest.

■ Finally, we cannot adopt Graham's equitable argument in the face of clear, unambiguous legislative language requiring forfeiture. Unlike the statute involved in *Marana Unified School Dist. No. 6 v. Aetna Cas. & Surety Co.,* 144 Ariz. 159, 696 P.2d 711 (1984), a principal case relied upon by Graham, § 107(B) declares the "bid bond ... shall be forfeited" if the apparently successful bidder does not execute the contract.[2] The Legislature's use of the word "shall" in the Act connotes a mandatory directive. *Carpet City, Inc. v. Stillwater Municipal Hosp. Auth.,* 536 P.2d 335 (Okl.1975). "[W]here the language of a statute is plain and unambiguous and the meaning clear and unmistakable, there is no room for construction, and no justification exists for interpretative devices to fabricate a different meaning." *In*

**2.** According to the *Marana* court, 696 P.2d at 712, the relevant Arizona statute read as follows:

3. That every proposal shall be accompanied by a certified check, cashier's check or a surety bond for five per cent of the amount of the bid included in the proposal as a guarantee that the contractor will enter into a contract to perform the proposal in accordance with the plans and specifications, or as liquidated damages in event of failure or refusal of the contractor to enter into the contract. The certified check, cashier's check or surety bond shall be returned to the contractors whose proposals are not accepted, and to the successful contractor upon the execution of a satisfactory bond and contract as provided in this article.

This statute mandates only that "every proposal shall be accompanied" by the bond and that the bond "shall be returned" if the successful bidder executes the contract. As noted by the *Marana* court, it does not address what happens if the contract is not executed.

*re Guardianship of Campbell,* 450 P.2d 203, 205 (Okl.1966).

Although Oklahoma has long recognized that our courts have the equitable power to rescind or cancel a contract entered into when one party labors under a material mistake of fact going to the very essence of a bid for a public construction contract, *see Lovell v. City of Altus,* 118 Okl. 106, 246 P. 468 (1925), the Legislature chose to treat contracts covered by the Act differently. On the basis of the uncontroverted facts, § 107 of the Act required the trial court to enter judgment for School.

AFFIRMED

JONES, J., concurs.

GARRETT, J., dissents.